ACCEPTED
14-05-00535-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
6/23/2015 9:50:11 AM
CHRISTOPHER PRINE
CLERK

No. __14-15-00535-CV__

# In the Court of Appeals
## For the __Fourteenth__ District of Texas
## Houston

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
6/23/2015 9:50:11 AM
CHRISTOPHER A. PRINE
Clerk

*IN RE THE LAW OFFICES OF ART DULA, ARTHUR M. DULA, INDIVIDUALLY, AND D/B/A THE LAW OFFICES OF ART DULA, ANAT FRIEDMAN, INDIVIDUALLY, AND D/B/A THE LAW OFFICES OF ART DULA, J. BUCKNER HIGHTOWER, AND THE ROBERT A. AND VIRGINIA HEINLEIN PRIZE TRUST, THROUGH ITS TRUSTEES ARTHUR M. DULA AND J. BUCKNER HIGHTOWER,*

*Relators.*

Original Proceeding from the
55th District Court, Harris County, Texas
Cause No. 2014-65947

## PETITION FOR WRIT OF MANDAMUS

BAKER & HOSTETLER LLP

Eric W. Kristiansen
ekristiansen@bakerlaw.com
State Bar No. 24027428
Joshua C. Thomas
jthomas@bakerlaw.com
State Bar No. 24066185
811 Main St., Suite 1100
Houston, TX 77002
(713) 751-1600 Telephone
(713) 751-1717 Facsimile

Michael R. Levin
*Pro Hac Vice Application to be Filed*
mlevin@bakerlaw.com
Florida Bar No. 351326
200 S. Orange Avenue, Suite 2300
Orlando, Florida 32801
Telephone (407) 649-4000
Facsimile (407) 841-0168

ATTORNEYS FOR RELATORS

ORAL ARGUMENT REQUESTED

**IDENTITY OF PARTIES AND COUNSEL**

The following is a list of the Parties and their respective counsel pursuant to Rules 52.2 and 52.3(a) of the Texas Rules of Appellate Procedure:

| | |
|---|---|
| Relators: | The Law Offices of Art Dula, Arthur M. Dula, Individually, and d/b/a the Law Offices of Art Dula, Anat Friedman, Individually, and d/b/a the Law Offices of Art Dula, J. Buckner Hightower, and the Robert A. and Virginia Heinlein Prize Trust, Through its Trustees Arthur M. Dula and J. Buckner Hightower |
| Attorneys for Relators: | Eric W. Kristiansen<br>ekristiansen@bakerlaw.com<br>State Bar No. 24027428<br>Joshua C. Thomas<br>jthomas@bakerlaw.com<br>State Bar No. 24066185<br>BAKER & HOSTETLER LLP<br>811 Main St., Suite 1100<br>Houston, TX 77002<br>Telephone: (713) 751-1600<br>Facsimile: (713) 751-1717<br><br>Michael R. Levin<br>*Pro Hac Vice Application to be Filed*<br>Florida Bar No. 351326<br>mlevin@bakerlaw.com<br>200 S. Orange Avenue, Suite 2300<br>Orlando, Florida 32801<br>Telephone (407) 649-4000<br>Facsimile (407) 841-0168 |

Respondent:                         The Honorable Judge Jeff Shadwick
                                    Presiding Judge,
                                    55th Judicial District Court
                                    Harris County, Texas
                                    Harris County Civil Courthouse
                                    201 Caroline, 9th Floor
                                    Houston, Texas 77002
                                    Telephone:   (713) 368-6055

Real Parties in Interest:           The Law Offices of Art Dula;

                                    Arthur M. Dula, Individually, and
                                    d/b/a the Law Offices of Art Dula;

                                    Anat Friedman, Individually, and
                                    d/b/a the Law Offices of Art Dula;

                                    J. Buckner Hightower;

                                    The Robert A. and Virginia Heinlein
                                    Prize Trust, Through its Trustees
                                    Arthur M. Dula and J. Buckner
                                    Hightower; and

                                    Takafumi Horie

Counsel for Takafumi Horie:         Lloyd E. Kelley
                                    THE KELLEY LAW FIRM
                                    2726 Bissonnet, Ste 240 PMB 12
                                    Houston, TX 77005
                                    Telephone (281) 492-7766
                                    Facsimile (281) 652-5973

                                    James D. Pierce
                                    1 Sugar Creek Center, Ste. 1080
                                    Sugar Land, Texas 77478
                                    Telephone (713) 650-0150
                                    Facsimile (713) 650-0146

ii

# TABLE OF CONTENTS

Identity Of Parties And Counsel.....................................................i

Table Of Contents.................................................................. iii

Index Of Authorities..............................................................vi

Brief References..................................................................ix

Statement Of The Case ...........................................................x

Statement Of Jurisdiction........................................................xi

Issue Presented..................................................................xii

    I.    STATEMENT OF FACTS .....................................................1

        A.    Horie's Investment in EA ...........................................2

        B.    The Settlement Agreement ........................................4

        C.    The Original and Amended Petitions ..........................8

        D.    The Rulings Below .....................................................11

    II.    SUMMARY OF THE ARGUMENT..............................................12

    III.    ARGUMENT & AUTHORITIES.................................................15

        A.    Horie Faces a "Heavy Burden" to Resist the Application of the Forum Selection Clause .................15

        B.    Relators Are Entitled to Enforce the Forum Selection Clause.......................................................17

        C.    Horie Cannot Avoid the Forum Selection Clause by Falsely Claiming that Dula was his Attorney........26

        D.    Horie Cannot Avoid the Forum Selection Clause by Pleading Fraud.....................................................31

    IV.    CONCLUSION & PRAYER.......................................................33

Certification Of Factual Statements ....................................... 35

Certificate Of Compliance ..................................................... 35

Certificate Of Service ............................................................ 36

Appendix ............................................................................... 37

# INDEX OF AUTHORITIES

**Cases**

*Accelerated Christian Educ., Inc. v. Oracle Corp.,*
   925 S.W.2d 66 (Tex. App.—Dallas 1996) ......................................... 24

*Bay Area Healthcare Grp., Ltd. v. McShane,*
   239 S.W.3d 231 (Tex. 2007) .......................................................... 10

*Brock v. Entre Computer Ctrs., Inc.,*
   740 F. Supp. 428 (E.D. Tex. 1990) ................................................. 24

*Clark v. Power Mktg. Direct, Inc.,*
   192 S.W.3d 796 (Tex. App.—Houston [1st Dist.] 2006, no
   pet.) ........................................................................................... 32

*CU Lloyd's of Texas v. Hatfield,*
   126 S.W.3d 679 (Tex. App.—Houston [14th Dist.] 2004,
   pet. denied) ................................................................................. 20

*Deep Water Slender Wells, Ltd. v Shell Int'l Exploration*
   *& Prod. Inc.,*
   234 S.W.3d 679 (Tex. App.—Houston [14th Dist.] 2007,
   pet. denied) ........................................................................... passim

*Falk & Fish L.L.P. v Pinkston's Lawnmower & Equip., Inc.,*
   317 S.W.3d 523 (Tex. App.—Dallas 2010, no pet.) ................. passim

*Ginter ex. rel. Ballard v Belcher, Prendergast, & Laporte,*
   536 F.3d 439 (5th Cir. 2008) ......................................................... 11

*Holeman v. Nat'l Bus. Inst., Inc.,*
   94 S.W.3d 91 (Tex. App.—Houston [14th Dist.] 2002,
   pet. denied) ................................................................................. 32

*In re ADM Investor Servs., Inc.,*
   304 S.W.3d 371 (Tex. 2010) ..................................................... 16, 17

*In re AIU Ins. Co.*,
148 S.W.3d 109 (Tex. 2004) (orig. proceeding)..........................xi, 17

*In re Automated Collection Techs., Inc.*,
156 S.W.3d 557 (Tex. 2004) (orig. proceeding)..........................xi, 17

*In re AutoNation, Inc.*,
228 S.W.3d 663 (Tex. 2007) (orig. proceeding)..........................xi, 17

*In re Boehme*,
256 S.W.3d 878 (Tex. App.—Houston [14th Dist.] 2008,
orig. proceeding) ...............................................................................15

*In re Int'l Profit Assocs.*,
274 S.W.3d 672 (Tex. 2009) (orig. proceeding)......................... 11, 32

*In re Laibe Corp.*,
307 S.W.3d 314 (Tex. 2010) (orig. proceeding)....................xi, 15, 16

*In re Lyon Fin. Servs., Inc.*,
257 S.W.3d 228 (Tex. 2008) (orig. proceeding)..........................xi, 17

*In re Tyco Electronics Power Sys., Inc.*,
No. 05–04–01808–CV, 2005 WL 237232
(Tex. App.—Dallas Feb. 2nd, 2005, orig. proceeding)....................24

*LeBlanc v. Lange*,
365 S.W.3d 70 (Tex. App.—Houston [1st Dist.] 2011, no pet.)......27

*My Cafe-CCC, Ltd. v. Lunchstop, Inc.*,
107 S.W.3d 860 (Tex. App.—Dallas 2003, no pet.) ........................31

*Phoenix Network Techs. (Europe) Ltd. v. Neon Sys., Inc.*,
177 S.W.3d 605 (Tex. App.—Houston [1st Dist.] 2005,
no pet.) ...................................................................15, 17, 21, 23

*Smith v. Kenda Capital, LLC*,
451 S.W.3d 453 (Tex. App.—Houston [14th Dist.] 2014, no
pet.) ...................................................................................................23

*Westchester Fire Ins. Co. v. Lowe,*
    888 S.W.2d 243 (Tex. App.—Beaumont 1994, no writ) ................. 10

**Constitutional Provisions**

TEX. CONST. art. V, § 6 ......................................................................... xi

TEX. GOV'T CODE § 22.221(b)(1) ............................................................ xi

# BRIEF REFERENCES

| | |
|---|---|
| Arthur M. Dula, individually and d/b/a The Law Offices of Art Dula | "Dula" |
| Anat Friedman, individually and d/b/a The Law Offices of Art Dula | "Friedman" |
| J. Buckner Hightower | "Hightower" |
| The Robert A. and Virginia Heinlein Prize Trust, Through its Trustees Arthur M. Dula and J. Buckner Hightower | The "Heinlein Trust" |
| Takafumi Horie | "Horie" |
| Mandamus Record | "MR" followed by the page number |
| Appendix Documents | "App." followed by its Tab letter designation and page number, if appropriate. |

## STATEMENT OF THE CASE

Nature of the case:

This is an original proceeding to enforce a forum selection clause requiring the claims in the underlying lawsuit to be litigated in the Isle of Man. The underlying suit involves claims by Horie against Relators for fraud and breach of fiduciary duty, among others.

Trial Court:

The Honorable Judge Jeff Shadwick, 55th Judicial District Court, Harris County, Texas.

Trial Court disposition:

The trial court denied Relators' Supplemental Motion to Dismiss based on the forum selection clause. The trial court then denied Relators' Motion for Reconsideration and stayed discovery in the underlying case during the pendency of this original proceeding.

Action from which relief is sought:

Relators seek mandamus relief from the trial court's April 22, 2015 Order Denying Motion to Dismiss (App. A), and from the trial court's June 1, 2015 Order from the bench denying the Motion for Reconsideration (App. D), issued in Cause No. 2014-65947; in the 55th Judicial District, Harris County, Texas.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this Petition for Writ of Mandamus pursuant to Article V, Section 6 of the Texas Constitution and Section 22.221(b)(1) of the Texas Government Code. The Texas Supreme Court repeatedly holds that mandamus is the proper remedy when a trial court erroneously refuses to enforce a forum selection clause, because the party attempting to enforce such a clause has no adequate remedy by appeal. *See In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (orig. proceeding); *In re Int'l Profit Assocs.*, 274 S.W.3d 672, 677 (Tex. 2009) (orig. proceeding); *In re ADM Investor Servs.,* 304 S.W.3d 371, 374 (Tex. 2010); *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228 (Tex. 2008) (orig. proceeding); *In re AutoNation, Inc.*, 228 S.W.3d 663 (Tex. 2007) (orig. proceeding); *In re Automated Collection Techs., Inc.*, 156 S.W.3d 557 (Tex. 2004) (orig. proceeding); *In re AIU Ins. Co.*, 148 S.W.3d 109 (Tex. 2004) (orig. proceeding).

## ISSUE PRESENTED

In Texas, parties resisting enforcement of a forum selection clause bear a heavy burden of proof. Such clauses are enforceable even by non-signatories to the agreement containing the forum selection clause if the plaintiff asserts interdependent and concerted misconduct among signatories and non-signatories. Here, Relators are included in the scope of a release in a prior settlement agreement. The Settlement Agreement contains a mandatory forum selection clause requiring all claims arising out of or in connection with the agreement to be brought in the Isle of Man. Plaintiff Takafumi Horie asserts claims against the Relators and alleges interdependent and concerted misconduct between Relators and the signatories to that agreement.

The issue is whether the trial court abused its discretion in refusing to enforce the mandatory forum selection clause in the prior settlement agreement and to dismiss the claims against Relators.

# I. STATEMENT OF FACTS

On November 10, 2014, Horie, a Japanese billionaire investor, filed the underlying lawsuit against the Relators and three other entities: Excalibur Limited; Excalibur Almaz Limited; and Excalibur Almaz USA, Inc. (collectively, "Excalibur"). (MR 1). Horie alleged that he was duped into investing $49,003,000 in Excalibur Almaz Limited ("EA"), an Isle of Man company whose business is private commercial space flight. (MR 1-4).[1] As discussed below, Horie later amended his petition to replace references to the Excalibur entities with generalized references to a "space enterprise" or "space business." (MR 77).

More than four years before this suit was filed, on June 29, 2010, Horie, EA, and others entered into a Deed of Assignment and Settlement ("Settlement Agreement") settling all claims related to Horie's $49,003,000 investment. (MR 262-83). The Settlement Agreement included a mandatory forum selection clause requiring resolution of all disputes in the Isle of Man:

> This Deed and any dispute or claim arising out of or in connection with it or its subject matter, existence, negotiation, validity, termination, or enforceability

---

[1] The Isle of Man is a self-governing island member of the United Kingdom, located between the islands of Great Britain and Ireland.

1

(including non-contractual disputes or claims) shall be governed by and construed in accordance with the laws of the Isle of Man.

Each Party irrevocably agrees that the Courts of the Isle of Man shall have exclusive jurisdiction in relation to any dispute or claim arising out of or in connection with this Deed or its subject matter, existence, negotiation, validity, termination, or enforceability (including non-contractual disputes or claims).

(MR 277, Settlement Agreement, at §13.1-13.2). The broad forum selection clause covers all claims "arising out of or in connection with" the "subject matter" of the Settlement Agreement, or its "negotiation" or "enforceability." (*Id*.). Thus, Horie irrevocably agreed to a mandatory and exclusive forum in the Isle of Man for resolution of all conceivable claims arising in connection with the subject matter of the Settlement Agreement. (*Id*.). The subject matter of the Settlement Agreement specifically includes Horie's $49,003,000 investment in EA.

## A. Horie's Investment in EA

The Settlement Agreement includes recitals that refer to several prior agreements reflecting the evolution of Horie's investment in EA. (MR 264-65). On October 16, 2005, Horie (doing business as "Japan Space Dream" or "JSD") entered into a Memorandum of Understanding ("MOU") with EA to develop a commercial spaceflight business using

2

Almaz space capsules. (MR 285-88). In the MOU, Horie agreed to purchase 75% of EA's stock for $49,003,000, payable in three tranches, the first upon execution of the MOU, the second on January 31, 2006, and the third on January 31, 2007. (MR 285). The MOU states that "[d]isputes shall be settled according to the laws of both Japan and The Isle of Man." (MR 288).

Shortly after entering into the MOU, Horie was arrested in January 2006 and charged with securities fraud relating to manipulations of the publicly traded stock in his company, then known as "Livedoor Holdings." (MR 319-22). Subsequently, he was tried, convicted, and sentenced to prison on March 16, 2007. (MR 324-26).

After his arrest but prior to his conviction, Horie defaulted on the third tranche of his investment in EA, due in January 2007. (MR 285, 290). As a result, on June 10, 2007, while the criminal case was on appeal, Horie/JSD entered into a Side Agreement with EA to amend the MOU. (MR 290-93). The Side Agreement provides, among other things, that Horie's shares in EA would be held in trust by a mutually acceptable, independent third-party trustee "until such time that Mr. Horie is found to be innocent or completes his sentence …." (MR 292).

3

The Side Agreement also provides that all disputes between Horie and EA would be resolved by binding arbitration in the Isle of Man. (*Id.*). In accordance with the Side Agreement, Horie established the "Abbey Trust" on March 14, 2008, and conveyed his shares in EA to the Trust. (MR 295-317). Thus, as of March 2008, Horie was no longer an EA shareholder, although he retained a beneficial interest in the EA shares through the Abbey Trust.

In the wake of Horie's securities fraud conviction, his former company (which changed its name from Livedoor to LDH Corporation, "LDH"), sued Horie for damages. (MR 244-45; MR 328, at ¶C; MR 334-35, at ¶(F), 2; MR 356-37, at ¶(F), 2). To settle these claims, Horie entered into three separate agreements, each dated December 25, 2009, and irrevocably assigned his ownership interest in EA, including his beneficial interest in the Abbey Trust, to LDH. (MR 328-76). Thus, as of December 2009, Horie no longer owned any shares of EA, or any interest in the commercial space flight business undertaken by EA.

B.    The Settlement Agreement

As noted above, in June 2010, Horie, EA, LDH, and George Abbey (trustee of the Abbey Trust) entered into the Settlement Agreement.

(MR 262). The Settlement Agreement included recitals concerning the prior agreements relating to Horie's investment—including the MOU, Side Agreement, and Abbey Trust—and provided that those agreements would be terminated. (MR 267). The underlying purpose of the Settlement Agreement was to redeem the EA stock that was originally acquired by Horie in 2005 for $49,003,000, and then transferred to LDH in 2009, as described above, and to resolve any other remaining issues among the parties.

Therefore, under the Settlement Agreement, EA redeemed the shares in exchange for payment of "Redemption Proceeds" to LDH. (MR 265-67). However, as a condition for redemption of these shares, it was necessary for Horie to be a party to the Settlement Agreement, and to participate in the mutual releases contained therein. Accordingly, Horie specifically released EA and "its Affiliates, shareholders, subsidiaries, employees, officers, directors, trustees, assigns, transferees, representatives, principals and agents (individually and collectively, the "*Company Group*") from any Claims that Mr. Horie … might have against the Company Group." (MR 267, Settlement

5

Agreement, at §5.1.2). The term "Claims" is broadly defined in the Settlement Agreement to include:

> a claim, potential claim, counterclaim, potential counterclaim, right of set-off, indemnity, liability, cause of action, right or interest of any kind or nature whatsoever, whether known or unknown, suspected or unsuspected, contingent or actual, however and whenever arising and in whatever capacity and jurisdiction, including, without limitation arising out of or in connection with termination of any agreement or arrangement contemplated in Clause 4 of this Deed.

(MR 278).

The Relators are each within the definition of the "Company Group." Specifically, Dula and Hightower are alleged to be officers and directors of EA. (MR 5-6). Dula and Hightower are also alleged to have acted as representatives or agents of EA in their capacities as trustees for the Heinlein Trust. (MR 20). Friedman is general counsel of Excalibur Almaz USA, Inc. (MR 16), which is an "Affiliate" of EA. (MR 278).[2] Thus, Friedman is a part of the Company Group. (MR 267). The Law Offices of Art Dula is alleged to be the alter ego of Dula. (MR 5,

---

[2] The Settlement Agreement defines "Affiliates" as, "in relation to a Party, any other person which directly or indirectly Controls, is Controlled by, or is under direct or indirect common Control with, that Party from time to time." (MR 278, Settlement Agreement, at Sch. 1, §1).

6

20). The Relators, as members of the Company Group, are entitled to enforce the forum selection clause.

Finally, the Settlement Agreement recites that:

Each Party has either had the terms and effect of this Deed explained by independent legal counsel or had the full opportunity to have its terms and effect explained by independent legal counsel; and each Party enters into this Deed freely, knowingly and voluntarily, free from duress of any kind.

(MR 274, Settlement Agreement, at §11.4). As described below, this provision is inconsistent with Horie's argument below that the Settlement Agreement should somehow be viewed as an agreement between an attorney and his client.

All of these provisions make it abundantly clear that the purpose of the Settlement Agreement was to allow EA to redeem the shares Horie originally purchased (then owned by LDH) and for all interested parties, represented by independent counsel, to mutually release any and all claims relating to Horie's investment in EA. As parties subject to this Settlement Agreement, Relators are entitled to enforce the forum selection clause, and insist that the Isle of Man is the exclusive jurisdiction for Horie's claims.

## C.    The Original and Amended Petitions

Horie ultimately lost all of his appeals and was incarcerated in Japan from June 2011 to March 2013.  (MR 244).  Horie filed his Original Petition in this lawsuit in November 2014, asserting claims directly against EA, a party to the Settlement Agreement, the Excalibur entities, and the Relators.  (MR 1-2).  The Original Petition falsely alleged that Dula was Horie's lawyer when Dula "induced" Horie to invest in EA in 2005.  (MR 2-3).  Horie also alleged that Dula and Hightower were directors of EA and the Chief Executive Officer ("CEO") and Executive Vice President ("EVP"), respectively, and that EA was the alter ego of Dula.  (MR 5-6).  The Defendants, then including the Relators and the Excalibur entities, filed a Motion to Dismiss to enforce the mandatory forum selection clause in the Settlement Agreement, and set the Motion to Dismiss for hearing on Monday, March 9, 2015.  (MR 30-65).

In an obvious attempt to avoid the forum selection clause, Horie filed an Amended Petition one business day before the oral hearing on Relators' Motion to Dismiss.  (MR 76-88).  The Amended Petition does not contradict the Original Petition or change the substance of Horie's

8

claim. In the Amended Petition, Horie still seeks to recoup his investment of the very same $49,003,000. (MR 81-82). The Amended Petition simply makes the same factual allegations in more generalized terms.

For example, both the Original Petition and the Amended Petition include the following allegation:

> Dula represented he had connections with the Russian aerospace company NPO Mashinostroyenia ("NPOM") who would provide hardware and technical expertise to build a commercial space business. He represented that he had acquired rights to NPOM space-proven capsules that could be used in a space program. Dula represented that he was well-connected and could assemble the professionals necessary to build a commercial space program. However, from the beginning, Dula had no intent to build a space program, but only to take Plaintiff's monies for his own use, utilizing a complex ruse, contrary to the interests of his *cestui que trust*. Dula convinced Plaintiff to place $49,003,000.00 into Dula's trust account for purposes of doing due diligence, and later setting up a space program in conformity with U.S. law and regulations (Dula claimed and continues to claim to be a "space law" expert)….

(MR 7-8 (Original Petition); MR 81-82 (Amended Petition)). The Original Petition alleges that Dula used the Excalibur entities for this purpose, while the Amended Petition refers more generally to a "schemes and devices." (MR 82). However, the use of the more generalized term does not change the Plaintiff's essential allegations.

9

In fact, the primary change in the Amended Petition is the effort to replace all specific references to the Excalibur entities with more general references to a "space business" or "space enterprise," and to obscure the Relators' connections to the Excalibur entities. (*See, e.g.,* MR 77-80, 82-85). The Original Petition provides explanation and context for these intentionally vague allegations in the Amended Petition.[3]

The central allegation in the Amended Petition is that Dula made false representations concerning the proposed "commercial space business," and convinced Horie to invest $49,003,000 in that business. (MR 7-8 (Original Petition); MR 81-82 (Amended Petition)). Despite Plaintiff's unusual but artful effort to plead more vaguely and generally in the Amended Petition than in the Original Petition, both Petitions refer to the same $49,003,000 investment. The Original Petition can and should be relied upon to explain that the "space business or enterprise," as it is called in the Amended Petition, refers directly to the Excalibur entities and Relators' connection therewith.

---

[3] Superseded pleadings are admissible evidence as party admissions that "remain forceful" even after subsequent pleadings have been filed. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007); *Westchester Fire Ins. Co. v. Lowe*, 888 S.W.2d 243, 252 (Tex. App.—Beaumont 1994, no writ).

10

## D. The Rulings Below

On April 9, 2015, Relators filed a Supplemental Motion to Dismiss, arguing that Horie's artful pleading[4] could not evade the application of the forum selection clause in the Settlement Agreement. (MR 93-214). A hearing on the Supplemental Motion to Dismiss was held on April 20, 2015. (App. C, MR 216). The trial court denied the Motion, drawing three erroneous conclusions. (App. A). The court first stated that the "pending cause of action is against Defendants in capacities different than their capacities under which they were signatories (in the case of Dula and Hightower)" of the Settlement Agreement. (App. A, MR 232). The court then noted that "the courts of the Isle of Man may not have jurisdiction over the parties, thus leaving Plaintiff without a remedy." (App. A, MR 232-33). Finally, the court stated that "considering that settlement of claims by a client against his attorney require specific and additional proof, the Court at this time

---

[4] As used here, "artful pleading" includes deliberately making allegations vague to avoid forum selection clause. As the Texas Supreme Court has explained, the applicability of forum selection clauses must be determined based on the "substance of the claim, not artful pleading." *In re Int'l Profit Assocs.*, 274 S.W.3d 672, 677 (Tex. 2009) (orig. proceeding). Because artful pleading cannot defeat a binding forum selection clause, the court must use a "common-sense examination of the claims and the forum-selection clause to determine if the clause covers the claims." *Id.* (citing *Ginter ex. rel. Ballard v Belcher, Prendergast, & Laporte*, 536 F.3d 439, 444 (5th Cir. 2008)).

11

observes that the release does not appear to include these claims against these Defendants." (App. A, MR 233).

Relators Dula and Hightower filed a Motion for Reconsideration on May 13, 2015. (MR 238-499). An oral hearing was held on this motion and several pending discovery motions. (App. D, MR 235-37). The trial court denied the Motion for Reconsideration, but stayed discovery in the underlying suit. (App. D). This proceeding followed.

## II. SUMMARY OF THE ARGUMENT

In his Amended Petition, Horie brings claims related to his $49,003,000 investment in Excalibur, a space-related business. However, in the July 2010 Settlement Agreement, Horie released all claims against Relators related to this $49,003,000 investment. (MR 267-68). The Settlement Agreement contains a mandatory forum selection clause providing that the Isle of Man is the exclusive jurisdiction for resolving disputes relating to the Settlement Agreement. (MR 277). Texas law imposes a heavy burden of proof upon parties resisting the enforcement of a forum selection clause. Horie did not even attempt to meet this burden in the lower court, and cannot do so as a matter of law. Therefore, the Relators are entitled to dismissal of

the claim brought by Horie in a Texas court.

The Relators are entitled to enforce the mandatory forum selection clause because they are each members of the "Company Group" defined as released parties in the Settlement Agreement. (MR 267). Moreover, under binding Texas precedent, Relators are entitled to enforce the binding forum selection clause because Horie has alleged that the Relators have acted in concert with one another as part of a "private commercial space program"—Excalibur. Where, as here, a plaintiff alleges interdependent and connected misconduct between a party to the Settlement Agreement (EA) and non-parties (Relators), the non-parties may enforce the forum selection clause. *See Deep Water Slender Wells, Ltd. v Shell Int'l Exploration & Prod. Inc.*, 234 S.W.3d 679 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

Horie argued to the trial court that he could avoid the burden of resisting the forum selection clause by falsely alleging that Dula was his attorney. This argument is unavailing. First, the same "heavy burden" in resisting a forum selection clause also applies to forum selection clauses in contracts between an attorney and client. *Falk & Fish L.L.P. v Pinkston's Lawnmower & Equip., Inc.*, 317 S.W.3d 523,

13

527 (Tex. App.—Dallas 2010, no pet.). Horie has done nothing to meet this burden. Second, Horie has not even alleged, let alone provided an affidavit or other evidence, that Dula represented Horie in 2010, when the Settlement Agreement was reached. Indeed, the Settlement Agreement itself recites that the parties had access to independent counsel. (MR 274). Third, it is simply not true that Dula was *ever* Horie's attorney. Plaintiff has only provided the most naked and conclusory allegation of an attorney-client relationship between Horie and Dula when the investment was made in 2005. No proof of this relationship has been provided, and the record contains unrebutted evidence to the contrary. (MR 378-80).

Horie also cannot meet this "heavy burden of proof" under any other theory. The recognized public policy favoring enforcement of mandatory forum selection clauses of this nature cannot be defeated simply by artfully pleading in generalities about space businesses instead of specifically identifying the Excalibur entities. Nor can the forum selection clause be evaded simply by pleading fraud, particularly given the language of this particular Settlement Agreement.

Given all of the foregoing, the Amended Petition *does not* allege

14

that Relators acted "in capacities different then their capacities under which they were signatories" of the Settlement Agreement. (App. A). To the contrary, Relators are entitled to enforce the forum selection clause in the Settlement Agreement, and to have the courts of the Isle of Man determine that the release in the Settlement Agreement bars Horie's alleged $49,003,000 claim. The trial court's failure to dismiss Horie's claims pursuant to the forum selection clause was an abuse of discretion. Mandamus is required.

## III.  ARGUMENT & AUTHORITIES

### A.  Horie Faces a "Heavy Burden" to Resist the Application of the Forum Selection Clause

Under Texas law, a contractual forum selection clause is presumed to be valid and enforceable. *In re Laibe Corp.*, 307 S.W.3d 314, 316–17 (Tex. 2010) (orig. proceeding). *Phoenix Network Techs. (Europe) Ltd. v. Neon Sys., Inc.,* 177 S.W.3d 605, 611 (Tex. App.— Houston [1st Dist.] 2005, no pet.) (holding that a forum selection clause is prima facie valid); *In re Boehme,* 256 S.W.3d 878, 881 (Tex. App.— Houston [14th Dist.] 2008, orig. proceeding); *Deep Water Slender Wells, Ltd.,* 234 S.W.3d at 692. The party opposing the enforcement of a forum

15

selection clause bears a heavy burden of proof. *In re Laibe Corp.*, 307 S.W.3d at 316.

"In determining whether to enforce a mandatory forum selection clause, courts must determine whether the claims in the case at hand fall within the scope of the forum selection clause and whether the court should enforce the clause." *Deep Water Slender Wells, Ltd.,* 234 S.W.3d at 687. In cases such as this one, courts must also determine "whether nonsignatories to the contract can enforce the forum selection clause." *Id.* If the claims fall within the scope of the clause, enforcement is mandatory unless the party opposing enforcement clearly shows "(1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial." *In re Laibe Corp.*, 207 S.W.3d at 316 (quoting *In re ADM Investor Servs., Inc.*, 304 S.W.3d 371, 375 (Tex. 2010)).

Texas courts routinely hold that mandamus is the proper remedy when a trial court erroneously refuses to enforce a forum selection clause. *In re Laibe Corp.*, 307 S.W.3d at 316 (citing *In re ADM Investor*

16

*Servs.,* 304 S.W.3d at 374); *In re Int'l Profit Assocs.,* 274 S.W.3d at 677; *In re Lyon Fin. Servs., Inc.,* 257 S.W.3d 228 (Tex. 2008) (orig. proceeding); *In re AutoNation, Inc.,* 228 S.W.3d 663 (Tex. 2007) (orig. proceeding); *In re Automated Collection Techs., Inc.,* 156 S.W.3d 557 (Tex. 2004) (orig. proceeding); *In re AIU Ins. Co.,* 148 S.W.3d 109 (Tex. 2004) (orig. proceeding).

Although the standard for reviewing the trial court's refusal to enforce a forum selection clause is abuse of discretion, "to the extent [this Court's] review involves the construction or interpretation of an unambiguous contract, the standard of review is de novo." *Deep Water Slender Wells, Ltd.,* 234 S.W.3d at 687 (citing *Phoenix Network Techs.,* 177 S.W.3d at 687). Here, the applicability of the forum selection clause depends in part on the Court's interpretation of an unambiguous contract—including whether Relators are within the "Company Group" defined in the Settlement Agreement. If so, Relators are entitled to enforce the forum selection clause.

## B. Relators Are Entitled to Enforce the Forum Selection Clause

Although the Relators are not directly named parties in the Settlement Agreement, they are entitled to enforce the forum selection

17

clause for two reasons. First, the express terms of the Settlement Agreement include the Relators in the definition of the "Company Group" that was released. (MR 267). Second, Horie sued both signatories and non-signatories to the Settlement Agreement, and alleged interdependent and concerted misconduct among these defendants, which allows the Relators to invoke the forum selection clause. *Deep Water Slender Wells,* 234 S.W.3d at 693-94.

### 1. The Relators are in the "Company Group"

The named parties to the Settlement Agreement are Horie, George Abbey (trustee of the Abbey Trust), LDH, and EA.[5] (MR 262). In the Settlement Agreement Horie released not only EA, but also:

> [I]ts Affiliates, shareholders, subsidiaries, employees, officers, directors, trustees, assigns, transferees, representatives, principals and agents (individually and collectively, the "***Company Group***") ….

(MR 267). Horie initially sued EA directly and also sued "Affiliates" of EA (MR 5-6), but later amended his petition and removed the Excalibur entities. The amendment has no effect on the Relators' ability to

---

[5] Dula and Hightower each signed the Settlement Agreement as directors of EA. (MR 162).

18

enforce the forum selection clause, because the Relators are part of the "Company Group." (MR 267).

As noted above, Dula is alleged to be a director and CEO of EA. (MR 5). Hightower is alleged to be a director and the EVP of EA. (MR 6). As officers and directors of EA, it is beyond dispute that Dula and Hightower are a part of the "Company Group" defined in the Settlement Agreement. (MR 267).

Dula and Hightower are also alleged to have acted as representatives or agents of EA in their capacities as trustees for the Heinlein Trust. (MR 77, 85). In fact, the only allegation in the Amended Petition relating to the Heinlein Trust is that "Dula used his position as trustee" of the Heinlein Trust to carry out the alleged wrongdoing. (MR 77). Horie asserts no cause of action against the Heinlein Trust directly, but only claims that Dula and Hightower "operated the Heinlein Prize Trust as his alter-ego … thus it bears the same liability for his acts as does" Dula. (MR 85). Since the Amended Petition claims only that the Heinlein Trust is the alter ego of Dula, then the Heinlein Trust must be considered a part of the Company Group, to the same extent as Dula.

19

Likewise, Horie named "the Law Offices of Art Dula" as a separate party in the caption of his Amended Petition, but there are no separate allegations against the Law Offices of Art Dula; in fact, there is no mention of the Law Offices of Art Dula in the Amended Petition whatsoever, other than that it is a "d/b/a" of Dula. (MR 80). Horie has not alleged that the Law Offices of Art Dula is a separate business entity, essentially only claiming that it is a sole proprietorship, which has no separate legal existence. *See CU Lloyd's of Texas v. Hatfield*, 126 S.W.3d 679, 684 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) ("Under Texas law, a sole proprietorship has no separate legal existence apart from the sole proprietor."). Therefore, the Law Offices of Art Dula is alleged to be the same as Dula, and thus must be considered a part of the Company Group.

Horie alleged that Friedman was general counsel of Excalibur Almaz USA, Inc. (MR 16). Excalibur Almaz USA, Inc. is an "Affiliate" of EA as defined in the Settlement Agreement. (MR 278, Settlement Agreement, at Sch. 1, §1). Thus, Friedman is part of the Company Group. (MR 267). Further, Friedman's name appears only three times in the Amended Petition: in the caption, in the first paragraph listing

20

defendants, and in the identification of "Parties." (MR 76, 80). The only "allegation" is that Friedman "is a lawyer at the law office of Art Dula." (MR 80). Because there are no other allegations against her, Friedman would be included in the Company Group to the same extent as the Law Offices of Dula. Thus, all of the Relators fall within the Company Group that was released by Horie in the Settlement Agreement, and therefore are entitled to invoke the forum selection clause.

### 2. Relators Can Enforce the Forum Selection Clause as Non-Signatories

Even aside from the express and unambiguous definition of "Company Group" in the Settlement Agreement, Relators would still be entitled to enforce the forum selection clause. Under Texas law, "[a] non-signatory defendant can invoke a forum-selection clause if the signatory plaintiff "has sued signatory and non-signatory defendants based on substantially interdependent and concerted misconduct by all defendants." *Phoenix Network Techs.*, 177 S.W.3d at 622; *Deep Water Slender Wells, Ltd.,* 234 S.W.3d at 693-94.

The *Deep Water* case is directly on point and compels enforcement of the forum selection clause. In *Deep Water*, the 14th Court of Appeals considered the defendants' attempt to enforce a forum selection clause

21

between the plaintiff and a related Dutch corporation that was not part of the litigation. 234 S.W.3d at 683-84. The forum selection clause called for exclusive jurisdiction in the Netherlands. *Id.* The plaintiff sued a Delaware corporation and three individuals, pleading that the Delaware corporation was an alter ego and successor to the Dutch corporation, and that the individual defendants engaged in "interdependent and concerted tortious conduct" with the Dutch corporation with the intent to defraud the plaintiff. *Id.* at 694.

The *Deep Water* court recognized that "courts should apply equitable estoppel when a signatory to the contract containing the forum-selection clause raises allegations of substantially interdependent and concerted misconduct by both nonsignatories and one or more signatories to the contract." *Id.* Accordingly, recognizing the presumption in favor of the enforceability of forum selection clauses and the heavy burden imposed upon those resisting them, the *Deep Water* court found that the nonsignatory corporation and individuals were entitled to enforce the forum selection clause. *Id.*

The facts here are similar since Horie has sued Relators, alleging that they engaged in "substantially interdependent and concerted

22

misconduct" with EA, which is a named party to the Settlement Agreement. Horie continues to allege that the Relators collectively operated a "space business," which clearly refers to EA and the other Excalibur entities. (MR 77-79). Further, Horie names Dula and Hightower as defendants, who both signed the Settlement Agreement as directors of EA. (MR 80-81, 162). The Amended Petition is replete with allegations of concerted interdependent and concerted misconduct, essentially claiming throughout the pleading that Dula, acting through or in concert with *all* the Relators, defrauded Horie out of $49,003,000. (*See, e.g.*, MR 85) ("Each of the causes of action herein is pled against all Defendants, individually and collectively.").

Accordingly, all Relators are entitled to invoke the forum selection clause contained in the Settlement Agreement. *Deep Water Slender Wells, Ltd.,* 234 S.W.3d at 693-94; *see also Smith v. Kenda Capital, LLC*, 451 S.W.3d 453, 458 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Phoenix Network Techs.*, 177 S.W.3d at 622 (concluding that the equitable-estoppel theories regarding non-signatories to arbitration agreements should also be applied to forum-selection clauses that do not involve arbitration); *Accelerated Christian Educ., Inc. v. Oracle*

*Corp.,* 925 S.W.2d 66 (Tex. App.—Dallas 1996)*, overruled in part on other grounds by In re Tyco Electronics Power Sys., Inc.,* No. 05–04–01808–CV, 2005 WL 237232 (Tex. App.—Dallas Feb. 2nd, 2005, orig. proceeding) ("[A] valid forum selection clause governs all transaction participants, regardless of whether the participants were actual signatories to the contract."); *see also Brock v. Entre Computer Ctrs., Inc.,* 740 F. Supp. 428, 431 (E.D. Tex. 1990).

Notwithstanding the foregoing, the trial court's Order notes that the *Deep Water* case "directs and authorizes the Court to consider a number of factors including the strong possibility, according to counsel at the oral argument of this motion, that the courts of the Isle of Man may not have jurisdiction over the parties, thus leaving Plaintiff without a remedy if this matter is dismissed." (App. A, MR 232-33). This conclusion misapplies the *Deep Water* decision.

First, the *Deep Water* court actually rejected the argument that the party enforcing the forum selection clause must prove that the forum selection clause was enforceable in the chosen forum. 234 S.W.3d at 695. Indeed, the *Deep Water* court found that amenability to the selected jurisdiction was **not** relevant to consideration of the

24

enforceability of the forum selection clause. *Id.* Therefore, contrary to the court's finding otherwise, Relators do not have the burden to prove that the forum selection clause would be enforceable in the Isle of Man.

Second, the *Deep Water* court expressly rejected the plaintiff's claim that the forum selection clause "would be so manifestly and gravely inconvenient to the resisting party that the resisting party effectively would be deprived of a meaningful day in court." *Id.* at 693. It is Horie's burden to make a "strong showing" that he would be deprived of a meaningful day in court if the forum selection clause is enforced. But Horie offered no affidavits or other evidence whatsoever in this regard. The *Deep Water* case does not authorize the court to reject a valid and binding forum selection clause where Horie offers no evidence whatsoever in support of the "strong showing" necessary to avoid a contractual mandatory forum selection clause.

Third, Horie's counsel claimed at the hearing, without authority or proof, that the Isle of Man did not have jurisdiction. (App. C, at p. 6-7). As a matter of law, this is inadequate to support the denial of the motion to dismiss. In any event, for avoidance of doubt, Dula and Hightower have acknowledged that they are subject to the jurisdiction

25

of the courts of the Isle of Man as a result of their positions as CEO and Executive Vice President of EA. (MR 240, App. D, at p. 5). Thus, none of the concerns expressed by the trial court in its order defeat applicability of the forum selection clause under *Deep Water*.

## C. Horie Cannot Avoid the Forum Selection Clause by Falsely Claiming that Dula was his Attorney

This is a case between sophisticated businessmen, not an attorney and client. Significantly, Horie *does not* assert a claim for legal malpractice. But Horie does make bare allegations in the Amended Petition that Dula was his lawyer. (MR 77). Even if the fiction of Dula as Horie's lawyer was believed, the forum selection clause would still be enforceable. Under Texas law, forum selection clauses are valid and enforceable, even in contracts between attorneys and clients. *Falk & Fish*, 317 S.W.3d at 527 (stating, in context of an attorney-client agreement, that "[f]orum selection clauses are generally enforceable"). Indeed, the heavy burden of resisting application of a forum selection clause is the same in contracts between attorneys and clients as it is in other contracts; this is clear from *Falk & Fish*—the very same authority that Horie relies on. *Id.* ("A party attempting to show that such a clause

26

should not be enforced bears a heavy burden to prove the clause is invalid.").

Horie has not come close to meeting this heavy burden of proof. He has not provided one scintilla of *evidence* that Dula was his lawyer at any time. There is no affidavit from Horie, or any other evidence whatsoever, to support the naked assertions in his pleading. At *best*, Horie alleges—without evidence—that Dula was his lawyer in 2005 when he decided to invest in EA. (MR 77 (alleging that Horie engaged Dula when he invested $49,003,000 for the purpose of setting up a space travel business)). There is not even an allegation, much less evidence, that the purported representation continued to 2010.[6] Horie was represented by independent counsel when he entered into the Settlement Agreement. (MR 378-80). Horie represented in the

---

[6] Horie's allegation that Dula was his lawyer is pure fiction. But even as alleged by Horie, the case is similar to *LeBlanc v. Lange*, 365 S.W.3d 70, 79 (Tex. App.— Houston [1st Dist.] 2011, no pet.), where the plaintiff claimed that a business associate was also his personal lawyer. In that case, an attorney (Lange) and a businessman (LeBlanc) formed several corporate entities together. *Id*. at 73-75. A dispute between LeBlanc and the company arose, and ended with a settlement agreement. *Id*. at 75-76. Rather than abide by the terms of the settlement agreement, LeBlanc sued the company and Lange, claiming that Lange had represented him personally in connection with the business and the settlement agreement. *Id*. at 78. The court concluded that, while Lange had previously represented LeBlanc personally, there was no evidence (other than LeBlanc's subjective belief) that the attorney-client relationship existed during the time period relevant to the settlement agreement. *Id*. at 82.

27

Settlement Agreement that he had "either had the terms and effect …

explained by independent legal counsel or had the full opportunity to

have its terms and effect explained by independent legal counsel." (MR

274, Settlement Agreement, at §11.4). This representation is contrary to

any inference that Dula was still representing him in connection with

the agreement. (*See id*.).

Horie has not pointed to any evidence which remotely suggests

that the Settlement Agreement is an attorney-client contract, and there

is no such indication in the four corners of that document. But even in

the context of attorney-client contracts, the party resisting enforcement

of the forum selection clause bears the burden of proof, *Falk & Fish*, 317

S.W.3d at 527, and Horie relies on nothing but bare allegations in the

pleadings, and even those bare allegations are insufficient.

*Falk & Fish*, the only authority that Horie cited in the underling

action for the proposition that the allegation of an attorney-client

relationship defeats the forum selection clause, is readily

distinguishable. In that case, a Dallas law firm was retained to

represent a North Carolina client in a North Carolina lawsuit. 317

S.W.3d at 525. The attorney-engagement agreement contained a forum

selection clause stating that "the applicable courts of Dallas, Texas shall be the *for a* (sic) for all attorney-client disputes." *Id.* Subsequently, the parties found themselves in a billing dispute, and the law firm sued the client in Dallas. *Id.* The trial court refused to enforce the forum selection clause and dismissed the firm's complaint for lack of personal jurisdiction. *Id.* at 526

On appeal, the *Falk* court recognized the presumed enforceability of a forum selection clause, and the heavy burden placed upon the party resisting the clause. *Id.* at 527. However, unlike the instant case, the client had submitted affidavits indicating that he did not understand that disputes would be resolved in Texas rather than North Carolina, where he lived, and that his attorney did not explain that he was acquiescing to an inconvenient forum in Texas. *Id.* at 529. While the court recognized that a client's failure to read the contract did not excuse performance, the fact that it was an attorney-client contract, coupled with the typographical error and consequent ambiguity of the clause, caused the *Falk* court to find that the client in that case met his burden to avoid enforcement of the forum selection clause. *Id.* at 530.

The *Falk* case is readily distinguishable on several grounds. First, in contrast to the clause at issue in this case, the forum selection clause in *Falk* was indefinite, non-exclusive, and contained a typographical error that did render it ambiguous. *Id.* at 529. The forum selection clause here contains no such infirmity. Second, the party resisting the forum selection clause in *Falk* actually did submit affidavits to sustain its burden to oppose enforcement of the clause. *Id.* Here, Horie has submitted no affidavits or other evidence. Third, and most importantly, in *Falk* the forum selection clause was unquestionably found in an attorney engagement agreement. *Id.* at 525. In direct contrast, as discussed above, the Settlement Agreement is not a contract between an attorney and client, and there is not even an allegation that Dula was Horie's lawyer in 2010. The Settlement Agreement recites that Horie had independent legal counsel, or had the full opportunity for review by independent legal counsel. (MR 274). Given Horie's multiple legal problems, including the appeal of his criminal conviction and sentence, and the defense of the claim by his former corporation, it is clear that Horie had an array of counsel representing his interests when the Settlement Agreement was signed in 2010. (MR 378-80). Clearly,

30

while the *Falk* case confirms the heavy burden of proof Horie faces even if his allegations about Dula are true, *Falk* does not control the outcome of this case. Horie clearly failed to meet his heavy burden of proof.

## D. Horie Cannot Avoid the Forum Selection Clause by Pleading Fraud

Horie's allegations that the Settlement Agreement was entered into as a result of fraud does not allow him to escape the reach of the forum selection clause for three reasons.

First, the plain language of the forum selection clause provides that any claim made in connection with the contract's negotiation or validity is subject to the exclusive jurisdiction of the Isle of Man's courts. (MR 277) (stating that the Isle of Man is the proper forum for any dispute or claim arising out of or in connection with the contract's "existence, negotiation, validity, termination or enforceability").

Second, Texas law is unequivocal that allegations of fraudulent inducement do not render a forum selection clause invalid or unenforceable. "[S]imply alleging fraud in the inducement of a contract is not sufficient to make a forum selection clause unenforceable." *My Cafe-CCC, Ltd. v. Lunchstop, Inc.,* 107 S.W.3d 860, 867 (Tex. App.— Dallas 2003, no pet.) (upholding dismissal of suit because forum

selection clause in agreement necessarily applied to fraudulent inducement claim); *see also In re Int'l Profit Assocs.*, 274 S.W.3d at 678. "When . . . the forum selection clause encompasses all causes of action concerning the contract, the claim that a party was fraudulently induced to enter the contract does not avoid the forum selection clause." *My Cafe-CCC,* 107 S.W.3d at 867. "To allow a party to avoid its obligations under a presumptively valid contract with a prima facie valid forum-selection clause simply because the party might carry its burden at trial would give the party an end run around …." *Clark v. Power Mktg. Direct, Inc.*, 192 S.W.3d 796, 800 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (upholding dismissal of suit in which Plaintiff alleged fraudulent inducement because forum selection clause provided for different forum than one in which suit was brought). "[A] court determining whether or not to enforce a forum-selection clause will not inquire into the enforceability of the contract in which that clause is found." *Id.* (quoting *Holeman v. Nat'l Bus. Inst., Inc.,* 94 S.W.3d 91, 102 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (rev'd on other grounds)).

Third, the definition of "Claim" precludes any allegation of fraudulent inducement. In the Settlement Agreement, Horie expressly bargained away and released claims that were "known and unknown" and "suspected and unsuspected." (MR 278). He cannot claim that he was fraudulently induced into entering into the Settlement Agreement because of the alleged concealment of facts that he did not know and did not suspect, when he has expressly released all such unknown and unsuspected claims. Accordingly, Horie cannot escape the reach of the forum selection clause to which he agreed by alleging that the contract was entered into as a result of fraudulent conduct.

## IV. CONCLUSION & PRAYER

Relators request that this Court grant this Petition and issue a Writ of Mandamus ordering the trial court to vacate its April 22, 2015 Order Denying Motion to Dismiss (App. A), and its denial of the Motion for Reconsideration (App. D), and issue orders dismissing all claims in the case. Relator further requests such other and further relief to which it may be entitled.

33

Respectfully submitted,

BAKER & HOSTETLER LLP

*/s/Joshua C. Thomas*
Eric W. Kristiansen
TBA No. 24027428
ekristiansen@bakerlaw.com
Joshua C. Thomas
TBA No. 24066185
jthomas@bakerlaw.com
811 Main, Suite 1100
Houston, Texas 77002-6111
Telephone (713) 751-1600
Facsimile (713) 751-1717

Michael R. Levin
*Pro Hac Vice Application to be Filed*
Florida Bar No. 351326
mlevin@bakerlaw.com
200 S. Orange Avenue, Suite 2300
Orlando, Florida 32801
Telephone (407) 649-4000
Facsimile (407) 841-0168

ATTORNEYS FOR RELATORS

34

**CERTIFICATION OF FACTUAL STATEMENTS**

Pursuant to Rule 52.3(j) of the Texas Rules of Appellate Procedure, I have reviewed this Petition and concluded that every factual statement in the Petition is supported by competent evidence in the appendix or record.

/s/Joshua C. Thomas
Joshua C. Thomas

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure and relying on the word-count function of the computer program used to prepare this document, I certify that the total number of words in this document is 6,764.

/s/Joshua C. Thomas
Joshua C. Thomas

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Petition for Writ of Mandamus has been served in accordance with the Texas Rules of Appellate Procedure via electronic filing service and/or certified mail, return receipt requested on this 22nd day of June, 2015.

The Honorable Jeff Shadwick
Presiding Judge,
55th Judicial District Court
Harris County, Texas
Harris County Civil Courthouse
201 Caroline, 9th Floor
Houston, Texas 77002
Telephone No.: (713) 368-6055

Lloyd E. Kelley
THE KELLEY LAW FIRM
2726 Bissonnet, Ste 240 PMB 12
Houston, TX 77005
Telephone (281) 492-7766
Facsimile (281) 652-5973

James D. Pierce
1 Sugar Creek Center, Ste. 1080
Sugar Land, Texas 77478
Telephone (713) 650-0150
Facsimile (713) 650-0146

*/s/Joshua C. Thomas*
Joshua C. Thomas

**APPENDIX
TO PETITION FOR WRIT OF MANDAMUS**

| TAB | DESCRIPTION |
|-----|-------------|
| A | April 22, 2015 Order Denying Motion to Dismiss |
| B | First Amended Petition<br>Original Petition |
| C | Transcript of April 20, 2015 Hearing on Supplemental Motion to Dismiss |
| D | Transcript of June 1, 2015 Hearing on Motion for Reconsideration and Discovery Motions |

# TAB A

CAUSE NO. 2014-65947

| | | |
|---|---|---|
| TAKAFUMI HORIE | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| | § | |
| VS | § | HARRIS COUNTY, TEXAS |
| | § | |
| THE LAW OFFICES OF ART DULA, | § | |
| et al. | § | |
| | § | |
| | § | 55TH JUDICIAL DISTRICT |

**FILED**
Chris Daniel
District Clerk

APR 2 2 2015
Time:_____ 10:31A
Harris County, Texas
By_____ Holman

## ORDER DENYING MOTION TO DISMISS

Upon consideration of Defendants' Supplemental Motion to Dismiss, Plaintiff's response, the exhibits submitted, and argument of counsel, the Court rules that the motion is DENIED.

While Plaintiff's Original Petition is part of the file and available to the Court for use in understanding the universe of facts, it is the Plaintiff's First Amended Petition which is the active claim which will be dismissed or not. The pending cause of action is against Defendants acting in capacities different than their capacities under which they were signatories (in the case of Dula and Hightower) of the Deed of Assignment and Settlement (the "Agreement"). Under the pleading and the plain reading of the Agreement, the Court cannot say that this action is subject to the release and forum selection clause as Defendants urge.

Further, *Deep Water Slender Wells, Ltd. v. Shell Int'l Exploration & Prod., Inc.* 234 S.W.3d 679 (Tex.App. – Houston [14th] 2007, pet denied) directs and authorizes the Court to consider a number of factors including the strong possibility, according to counsel at the oral argument of this motion, that the courts

Certified Document Number: 65135810 - Page 1 of 2

of the Isle of Mann may not have jurisdiction over the parties, thus leaving Plaintiff without a remedy if this matter is dismissed.

It may be that Defendants ultimately succeed through a motion for summary judgment in demonstrating that the release in the Agreement does indeed apply to Plaintiff's claims in this case, but the Court cannot make that determination at this time. Under the pleadings and the Agreement, and considering that settlement of claims by a client against his attorney require specific and additional proof, the Court at this time observes that the release does not appear to include these claims and these Defendants.

IT IS SO ORDERED.

SIGNED on the 22 day of April, 2015.

_____
JUDGE JEFF SHADWICK

Certified Document Number: 65135810 - Page 2 of 2



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   June 5, 2015

Certified Document Number:        65135810 Total Pages:  2

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

234

# TAB B

**CAUSE NO. 2014-_____**

| | | |
|---|---|---|
| TAKAFUMI HORIE, | § § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § § | |
| v. | § § | |
| | § | HARRIS COUNTY, TEXAS |
| THE LAW OFFICES OF ART DULA, ARTHUR M. DULA, individually, and d/b/a THE LAW OFFICES OF ART DULA, ANAT FRIEDMAN, individually, and d/b/a THE LAW OFFICES OF ART DULA, J. BUCKNER HIGHTOWER, THE ROBERT A. AND VIRGINIA HEINLEIN PRIZE TRUST, through its trustees ARTHUR M. DULA AND J. BUCKNERHIGHTOWER, EXCALIBUR LIMITED, EXCALIBUR ALMAZ LIMITED, and EXCALIBUR ALMAZ USA, INC., | § § § § § § § § § § § § § § | |
| Defendants. | § | ____TH DISTRICT COURT |

**PLAINTIFF'S ORIGINAL PETITION**

**I.**

**INTRODUCTION**

**This is a case werhe fraud occurred in the private spaceflight market. Houston lawyer Art Dula and his law firm, the Law Office of Art Dula, utilizing offshore shell corporations in the Isle of Man, defrauded a Japanese billionaire investor, Takafumi Horie, out of $49 million cash, using Russian made "Almaz" class spacecraft as the bait.**

Certified Document Number: 63120901 - Page 1 of 28

II.

Takafumi Horie files this Original Petition against Defendants The Law Offices of Art Dula, Arthur M. Dula, individually and d/b/a The Law Offices of Art Dula, J. Buckner Hightower, Anat Friedman, individually and d/b/a The Law Offices of Art Dula, The Robert A. and Virginia Heinlein Prize Trust, Excalibur Limited, Excalibur Almaz Limited, and Excalibur Almaz USA, Inc. for breach of fiduciary duty, violations of the Isle of Man Company Acts of 1931 and 2006, fraud, money had and money received, statutory theft, statutory fraud, violation of the Texas Securities Act, an accounting, constructive and or resulting trust, and alternatively for conversion, negligence and breach of contract. Plaintiff seeks rescission/damages in the amount of his $49,003,000.00 original investment, plus interest, attorneys' fees, and damages allowed at law or equity, including punitive damages.

III.

## CASE SUMMARY

This is a case about Houston attorney Art Dula, who took advantage of Japanese entrepreneur Takafumi Horie, by claiming that he could set up a commercial space transportation program to carry cargo, scientific experiments, and people into low Earth orbit to the International Space Station and other space destinations. Dula was, and is, the lawyer and a trustee for The Robert A. and Virginia Heinlein Prize Trust ("Heinlein Trust"). Heinlein was a prolific science fiction author who was famous for writing about manned space exploration. Dula used his position as trustee of the Heinlein Trust to promote his law firm in getting business under the premise of establishing "new space business enterprises." Using his position as trustee of the Heinlein Trust, Dula, through an intermediary, sought out Horie and solicited him as a client and investor.

Certified Document Number: 63120901 - Page 2 of 28

2

IV.

Horie engaged Dula as his attorney, and then trusted him enough to give Dula $49,003,000.00 in trust for purposes of setting up a business to accomplish space travel. The money was sent to Dula's Texas IOLTA client trust fund account to accomplish the goals for Dula's client Horie. The Defendant corporations were set up by Art Dula, and the sole capital for these companies was Plaintiff's funds. Dula never intended to engage in a commercial space program, and in fact continually misrepresented, concealed facts and defrauded his client Takafumie Horie d/b/a Japanese Space Dream ("Horie"). His intent was to take his clients' money over time through a complex scheme under the guise that he was building a space program.

V.

Dula has gone to great lengths to hide and conceal his bad acts. Plaintiff Horie only recently discovered the wrongs perpetrated against him by Defendants, because the facts were concealed by Defendant Dula, and Dula never advised Horie of his wrong doing. Plaintiff relied on and trusted Defendant Dula in Dula's position as his attorney, his fiduciary, and because of his representations as to his expertise concerning his spaceflight project and his investment therein.

VI.

Plaintiff Horie became aware of Dula's scam when he read an article by Alexander Forbes that Dula had sold at auction one of the spacecraft articles purchased with Plaintiff's money. The Forbes article implied that the company was liquidating, and indicated the spacecraft was only suitable for display in a museum, and not as a potential flight article as had been falsely represented to Plaintiff Horie from the beginning. The supposed space program was

Certified Document Number: 63120901 - Page 3 of 28

3

Certified Document Number: 63120901 - Page 4 of 28

a sham, as Dula never had the rights or ability to utilize the spacecraft purchased with Plaintiff's money for anything other than display purposes. However, this fact was kept secret from Plaintiff and other persons associated with the Excalibur Almaz project for years. Plaintiff never authorized the funds held in trust be utilized to purchase spacecraft sold for display purposes. Plaintiff never authorized funds held in trust to be utilized to set up a "space program" incapable of space travel. Plaintiff never authorized funds held in trust to be utilized to set up a business other than a true "space business enterprise." Had this information been known to Plaintiff, he would have never invested in the first place, and if known after he had invested, Plaintiff would have petitioned for dissolution of the Defendant Excalibur Almaz Limited under provisions of the Isle of Man Company Acts of 1931 and 2006, and recovered his investment years ago as the companies were created for a fraudulent purpose. By additional fraudulent acts, Dula ultimately obtained complete control of Plaintiff's funds and has utilized them for his own benefit, and, on information and belief, has fraudulently transferred the funds to his wife, Tamea, a prominent Houston lawyer, and his children Russell and Austin. The continuing fraud and breach of fiduciary duty has damaged Plaintiff in excess of the minimum jurisdictional amounts of this court.

VII.

Plaintiff Horie seeks by this suit to recover damages, assets of the Defendant enterprises which are held in trust for Plaintiff, and to obtain other damages allowed by law for himself, and, if appropriate, alternatively, by joining any other putative interested party shareholders, including LDH Corporation and/or Oceanedge Development Limited, pursuant to Rule 39, Texas Rules of Civil Procedure.

4

## DISCOVERY LEVEL AND REQUEST FOR DISCLOSURE

Discovery should to be conducted under Level 2 pursuant to Texas Rule of Civil Procedure 190.3. Plaintiff requests disclosure of the items set forth in Tex. R. Civ. P. 194.2 a-k.

IX.

## PARTIES

A. Plaintiff Takafumi Horie is a citizen and resident of Japan, and at all relevant times was doing business as Japan Space Dream. Horie was solicited in Japan from Texas lawyer Defendant Art Dula to invest US $49,003,000.00 for creation of a private operating spaceflight program. Dula created companies for Horie, including Excalibur Almaz Limited.

B. Defendant Arthur M. Dula, individually and d/b/a the Law Office of Art Dula, is a resident of Houston, Harris County, Texas. He may be served with process at his place of business at 3106 Beauchamp Street, Houston, Texas 77009.

C. Defendant Anat Friedman is a lawyer at the law office of Art Dula and is a resident of Houston, Harris County, Texas. She may be served with process at his place of business at 3106 Beauchamp Street, Houston, Texas 77009.

D. Defendant Robert A. and Virginia Heinlein Prize Trust ("Heinlein Prize Trust") may be served by serving either of its trustees, Arthur M. Dula or J. Buckner Hightower, at 3106 Beauchamp Street, Houston, Texas 77009.

E. Defendant Excalibur Limited is an Isle of Man corporation. It has operated for all relevant time periods as the alter-ego of Defendant Dula from Houston, Texas. Excalibur Limited may be served with process by serving its CEO Arthur M. Dula at his place of business at 3106 Beauchamp Street, Houston, Texas 77009.

Certified Document Number: 63120901 - Page 5 of 28

5

F. Defendant Excalibur Almaz Limited is an Isle of Man corporation. It has operated for all relevant time periods as the alter-ego of Defendant Dula from Houston, Texas. Excalibur Almaz Limited may be served with process by serving its CEO Arthur M. Dula at his place of business at 3106 Beauchamp Street, Houston, Texas 77009.

G. Defendant Excalibur Almaz USA, Inc. is a Texas corporation headquartered in Houston, Harris County, Texas It has operated for all relevant time periods as the alter-ego of Defendant Dula from Houston, Texas. Excalibur Almaz USA operates the business affairs of Excalibur Almaz Limited under the terms of a service contract. Excalibur Almaz USA, Inc. may be served with process by serving its Chairman of the Board and sole shareholder Arthur M. Dula at his place of business at 3106 Beauchamp Street, Houston, Texas 77009.

H. Defendant J. Buckner Hightower is a Texas citizen and resident, and is the claimed current CEO of Excalibur Almaz USA, Executive Vice President of Excalibur Almaz Limited, recently became a minority shareholder of Excalibur Limited, and on the Board of Directors of all three of those corporate Defendants comprising the enterprise. Defendant Hightower conspired, aided and abetted and/or facilitated Defendant Dula in committing and concealing the illegal acts complained of herein. He engaged in actions designed to cover up and keep facts secret from the public auditors and the government. He may be served with process at his place of business at 3106 Beauchamp Street, Houston, Texas 77009.

X.

## **JURISDICTION**

This Court has subject matter jurisdiction over this dispute because the amount in controversy exceeds its jurisdictional threshold. See Tex. Gov't Code Ann. §§ 24.007 - 24.008.

Certified Document Number: 63120901 - Page 6 of 28

6

This Court has personal jurisdiction over Defendants because: (1) they are actively engaged in business in the State of Texas; (2) they reside in the State of Texas; (3) they performed services in this state pursuant to a contract and/or entered into a contract that was performable in whole or in part in this state; and/or (4) they committed torts and statutory violations in whole or in part in this state. See Tex. Civ. Prac. & Rem. Code § 17.042.

Venue is proper under Tex. Civ. Prac. & Rem. Code § 15.002. All or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this County.

## XI.

## <u>FACTUAL BACKGROUND</u>

The Plaintiff is a Japanese citizen, who was interested in the development and advancements in space exploration. Art Dula sought Plaintiff out representing that he was a "space attorney" who could assist him in the development of a space program. Dula requested that Horie give him approximately $50,000,000 in trust, so that Dula could facilitate Plaintiff's dream in developing a private commercial space program. Dula represented he had connections with the Russian aerospace company NPO Mashinostroyenia ("NPOM") who would provide hardware and technical expertise to build a commercial space business. He represented that he had acquired rights to NPOM space proven capsules that could be used in a space program. Dula represented that he was well connected and could assemble the professionals necessary to build a commercial space program. However, from the beginning, Dula had no intent to build a space program, but only to take Plaintiff's monies for his own use, utilizing a complex ruse, contrary to the interests of his *cestui que trust*. Dula convinced Plaintiff to place $49,003,000.00 into Dula's trust account for purposes of doing due diligence, and later setting up a space program in conformity with U.S. law and regulations (Dula claimed and continues to claim to be a "space

7

law" expert). Defendant Dula formed Defendant Excalibur Limited ("EL") with long-time associate Buckner Hightower and Chris Stott (spouse of NASA astronaut Nicole Stott). EL was to act as the holding company for Dula's interest in Excalibur Almaz Limited ("EA"). EA was to be the operating commercial space company, and is the entity into which Plaintiff's monies were placed and which owned all the "space hardware," intellectual property, and other assets. Other than Plaintiff's funds, no other capital or income was received by EA. EA was managed by a Texas corporation formed and wholly-owned by Defendant Dula called Excalibur Almaz USA, Inc. ("EA USA"). Dula utilized EA USA to take funds and monies from EA as he desired.

## XII.

Using Plaintiff's funds, Dula purchased four Almaz spacecraft capsules and two space stations from NPOM. This space hardware came from a Soviet-era secret space program, and Dula represented to Plaintiff that a key advantage was that the spacecraft and space stations being acquired had undergone rigourous flight testing. He represented to Plaintff and others that the hardware could be made "flight worthy," and that he could refurbished, modify and update the equipment so that it would be certified for flight. The purchase contracts had to be approved by the Russian government, and unbeknownst to Plaintiff and on information and belief, expressly excluded the right to modify the Russian hardware, thus relegating it **to display uses only**! The items were only museum pieces, a secret Dula would keep until well after he acquired control of Plaintiff's investment.

## XIII.

Dula took Horie's money out of the IOLTA trust account and used it improperly. Dula first wired the funds to an account that he controlled in the Isle of Man. Then Dula set up with the funds an investment structure that provided Horie a 75% share in EA. Dula, despite

providing zero of his own capital, drafted the investement agreement to provide that his company EL acquire additional equity, if the entity EA met certain development milestones: (1) certification of the Almaz capsules for unmanned flight (EL increased to 35.25%), (2) successful unmanned orbital flight of an Almaz capsule (EL increased to 45.5%), (3) certification of Almaz capsules for manned flight (EL increased to 55.8%), and (4) successful orbital manned flight of an Almaz capsule (EL increased to 66%). Defendants Dula and EA have never to this date accomplished any of the milestones, nor did Dula ever have any intention of doing so.

## XIV.

At the time he solicited the investment from Plaintiff, Defendant Dula was a lawyer licensed inTexas, who held himself out as an expert in "space law," in properly establishing and organizing space enterprises, in advising concerning contracts with NASA, in negotiating and drafting "space agreements." Dula drafted a "Private Placement Memorandum" which he represented to Plaintiff was a part of the legal documentation necessary to create a legal space program which he represented to be a proper "space agreement" to establish a "space enterprise." Per Dula's instructions, Plaintiff wired over time $49,003,000.00 to Dula's attorney trust account in Houston, Texas. Thereafter, Defendant Dula transferred the money to an account in the Isle of Man associated with Excalibur Almaz Limited; an account with Dula controlled. Later, on information and belief, funds were sent to his wife Tamea and his children Russell and Austin Dula.

## XV.

On Dula's request funds were provided in tranches, with the final one-third being $16 million. Dula falsely claimed a delay in the final payment interferred with Dula's ability to achieve the milestones that he included in the initial documentation. He falsely advised his

9

client and *cestui que trust* that he could legally take Plaintiff's entire investment, leaving him nothing if Plaintiff did not acknowledge the milestones were achieved. Plaintiff relied on Dula's advice which was given in violation of his fiduciary duty, and in reliance upon the representation that a real space program would be achieved. Being a part of a real space program was Plaintiff's dream, and if that could be achieved the ownership percentages were insignificant compared to being involved in a pioneering new business. Further, Plaintiff trusted Dula to act in Plaintiff's best interests, and relied on his representations that a space program would be created. In fact the milestones and spaceflight in general could never be accomplished, and Dula knew at the time he made the representations the milestones could not be accomplished. The representations made to Plaintiff were false and Dula omitted to state facts necessary to make the statements that were made not misleading. However, in reliance on the truth of the misrepresentations and that Dula would continue to act in Plaintiff's best interest and build a space venture, Plaintiff accepted a reduction in his equity ownership to 34%, as though all milestones had been met (even though not a single milestone had been accomplished), and to place his remaining interest into a Trust with a trustee suggested by Dula. Thereafter, Plaintiff Horie did make the last investment tranche payment, bringing his total investment to $49,003,000.00.

XVI.

Excalibur Almaz Limited could not accomplish its represented purpose of modifying and flying the Almaz spacecraft, therefore under Isle of Man law, Plaintiff or any shareholder had the right to dissolved EA pursuant to Isle of Man ("IOM") law and obtained the return of the investment. As counsel for Plaintiff, Dula should have advised Plaintiff of this right, but failed to do so. The premise upon which Excalibur Almaz Limited was created – to modify and fly the Almaz spacecraft – could not be accomplished, and had any shareholder known this fact the

10

shareholder could have forced the dissolution under IOM law. EA assets at all times relevant had a value of at least $34,000,000. Any interest Dula obtained through his ownership in EL, was obtained contrary to his fiduciary duty and his obligations as an attorney, and accordingly as a matter of law, his breach of fiduciary duty results in all interests being forfeited. Plaintiff Horie was denied this option because Defendant Dula fraudulently concealed the fact that the purchase contracts for the spacecraft did not allow modifying the spacecraft, as would be required to launch them into space and fly them as represented. The reduction in Horie's interest by Defendant Dula, and Dula's advice to place Horie's shares into a Trust controlled by a business associate of Dula's, was a direct result of material misrepresentations and breaches of fiduciary duty that furthered Dula's plan to take Plaintiff's monies.

## XVII.

Defendant Dula purported to control EA by virtue of his majority ownership of EL, which in fact he held in trust for Plaintiff. But Defendant Dula could personally claim only 45% of EA (the company with all the assets) – and he wanted to own and control it all. Defendant Dula began a systemantic fraudulent plan to get it, at a time when EA had total assets of at least $34 million, which included approximately $29 million in cash, plus space hardware with a book value of over $5 million. But Dula was incentivized by more than the money to own the entire enterprise himself – he thought he had to in order to forever bury his secret that he had induced Plaintiff to invest in the first place with the lie that he had procured legal rights to modify and fly the spacecraft articles purchased from the Russians.

## XVIII.

EA never could accomplished any of its milestones. Defendant Dula told his putative shareholders – LDH and the Stotts – that his assessment was that more investment would be

11

needed, and even then it would be hard to do. Dula then falsely told his putative shareholders that he was committed to spending all the money in the enterprise to attempt to achieve the objective of commercial spaceflight. However, secretly Dula knew this objective could not be done because EA did not own the legal rights to modify and fly the space hardware he had purchased from the Russians.

XIX.

Breaching his fiduciary duty, Dula "magically" transformed Horie's entire initial investment remaining at that time – upon informantion and belief over $34 million -- into his own name. But he had to lie again to get it done.

XX.

On information and belief, Chris Stott resigned as an employee of EA USA and as Board member of EA because of disagreements with how the enterprise was being run and for family reasons having mostly to do with the time commitment required of him as his wife trained for her first flight as a NASA astronaut. The Stotts maintained their interest in EA indirectly through EL by way of their wholly-owned entity Oceanedge Development Limited, but became inactive in the management of the company.

XXI

On information and belief, Defendant Dula sent a team of EA USA employees from Texas to the Isle of Man, including two members of the Board of EA and its CFO, to negotiate a buy out with Bryan Stott, one of the members representing the interests of the Stotts in EL and EA. During these negotiations, Chris Stott, then in Houston, Texas, was also consulted. The EA team was directed by Dula to represent, and did represent, to the Stotts (1) that EA owned four Almaz capsules and two space stations that could be and were going to be used to build an

Certified Document Number: 63120901 - Page 12 of 28

orbital space transportation company, (2) that EA intended to use all of the funds invested by Horie to accomplish that goal, and would be looking for additional funds, and (3) that Horie and LDH continued to back the enterprise, hopefully with additional funding. These representations were known by Defendant Dula to be false at the time they were made, and the Stotts were in no position under IOM law to out vote Dula: Dula controlled EL (in which the Stotts were the minority shareholder), and through EL Dula controlled EA (in which LDH was the minority shareholder). On information and belief, because of these false representations, the Stotts, believing that Dula would ultimately fail and that there was no alternative to letting Dula waste the assets of the enterprise down to zero, agreed to have their interest in EL bought out for $300,000 – less than 3% of the value of their interest if LDH had been bought out first and EL had thereafter been dissolved. On information and belief, the Stotts were provided with EA's confidential internal business plans to support the false representations (1) that EA owned the Russian space hardware with rights to modify it for flight and (2) that Dula would consume all of the current cash then in the enterprise to try to achieve a commercial spaceflight objective that the enterprise did not have the legal right to do (by showing proposed budgets and capital raise requirements).

XXII.

On information and belief, after the Stotts sold out their interest to Dula, Defendant Dula then used the same misrepresentation tactics and, in addition, touted the calculated share value in EA achieved in the Stott buy out as the fair market value of EA stock, in order to fraudulently induce a similar buy out of Horie's assigned stock interest from LDH for a mere $475,000. At the time LDH held a 34% interest in EA, valued at about $12 million, more than $10 million of which was cash. The only reason LDH would have ever agreed to such a lop-sided deal was if

13

Certified Document Number: 63120901 - Page 13 of 28

they believed Dula had the rights he claimed to the spacecraft to modify them for flight – which he did not – and that he was going to spend all the cash in the enterprise to try to achieve that objective; again, an objective he did not have the legal right to pursue. Just as with the Stotts, as a minority shareholder in EA, LDH did not have the legal right under IOM law to prevent Dula from pursuing that objective, unless they had known at the time that the representation as to ownership rights in the space hardware was false – which, of course, they did not know.

## XXIII.

On information and belief, Defendant Dula negotiated the LDH buy out himself. He made the same two false representations that he had made to the Stotts in order to induce LDH and Plaintiff Horie into selling the EA shares to him for pennies on the dollar. In addition, he provided LDH information about the fraudulently induced Stott transaction, claiming that it set the fair market value for EA stock. The deal was memorialized in a written agreement, which included express and specific reference to confidential information being provided under a nondisclosure agreement, including the same confidential internal business plans that had been provided to the Stotts, in order to falsely bolster all three misrepresentations.

## XXIV.

On information and belief, Dula's scheme was to buy out other owners of EA for less than 3% of the liquid value of their interests – a sale of securities valued at more than $34 million, most of which was cash. After Dula executed his scheme, Plaintiff Horie and the putative minority shareholders, LDH and the Stotts, were completely out of the enterprise, and EA still had some $28 million in cash left, plus the display purpose space hardware.

14

Certified Document Number: 63120901 - Page 14 of 28

XXV.

Defendant Dula had by lies and deceit convinced the minority shareholders in EA that the company had a true market value of only $1.4 million because of the control he could exercise and his misrepresentations about the legal ability of the corporation to be able to modify and fly the Almaz spacecraft and space stations, effectively fraudulently locking the $28 million in cash and the other assets in an illiquid corporate structure.

XXVI.

Even more striking, Defendant Dula had funded the buy-outs with money from Plaintiff's initial investment, some of which was laundered through his wholly-owned entity, Excalibur Almaz USA. Thus, Defendant Dula had spent some $775,000 of Horie's money in order transfer $28 million of Horie's money (plus the space hardware) into his own name – and now he thought he had it all for himself. But the law is not so kind when greed is satisfied by fraud and dishonest conduct.

XXVII.

Dula knew all along that his representations were false. Employees within EA USA learned only later that the contracts that supposedly gave EA ownership of the space hardware only transferred ownership rights for the purpose of displaying the hardware, e.g., at air shows, trade shows or in museums. Thus, Defendants Dula and EA had no rights to the capsules necessary to refurbish and modify them in order to certify them to fly humans in space. Without such rights, the representation that EA owned the space hardware to accomplish the objectives of the enterprise was false. Had Horie or LDH known this they would have insisted on their full share in any buy out, or would have insisted that EL and EA be dissolved in accordance with the

15

Certified Document Number: 63120901 - Page 15 of 28

Isle of Man Company Acts of 1931 and 2006, because it was legally impossible to achieve the stated objectives of the enterprise, as well as for other reasons under those Acts.

XXVIII.

Recognizing they were about to be caught, Defendant Dula and the General Counsel Anat Friedman, an associate lawyer of Dula and counsel of EA USA, purportedly attempted to get the Russians and NPOM to modify the sales contracts, thus admitting the deficiencies in legal rights; but that was never accomplished. On information and belief, examination of EA's books revealed that during his space hardware purchase contract negotiations with NPOM, Defendant Dula made cash payments – fraudulently concealed by Defendant Dula as fictitious contract payments – to Pavel Shirokov, Deputy General Director of NPOM and the head officer at NPOM in charge of negotiating the contracts for the space hardware, and importantly, for getting those contracts approved by the Russian Space Agency, Roscosmos. Arguably, these cash payments to Mr. Shirokov not only incentivized NPOM to enter into the contracts with Dula, but also paved the way for Mr. Shirokov to obtain Russian government approval. They were in effect cash payments made to a Russian government official and/or an agent of the Russian government in order to get a sales contract. Such actions by Defendant Dula could constitute a violation of the Foreign Corrupt Practices Act. If the contracts for the space hardware were obtained by criminal conduct, then they are void and the enterprise was not able as a legal matter to accomplish its stated objectives. Horie did not authorize funds to leave the trust to purchase items in violation of the law. Obviously, had Plaintiff Horie known the truth he would not have invested in the supposed space enterprise. On information and belief, if the Stotts or LDH had known this at the relevant times, they would have insisted on their full share in any buy out, or would have insisted

16

that EL and EA be dissolved at the relevant time, because it was legally impossible to achieve the stated objectives of the enterprise.

## XXIX.

Additionally on information and belief, Defendant Dula at an EA Board meeting revealed to his Board for the first time that he may not have the intent to use the money then remaining in the enterprise to try to accomplish the stated objective of developing a space transportation system. He argued instead, that he had the right as sole owner to deploy the funds into any activity he saw fit – especially ventures that might be less risky and have a better chance of success. Had Horie realized that Defendant Dula might take the money in the company and enter another business or take it for himself – contrary to his representations to them – Horie would never had invested in the first place.

## XXX.

Upon information and belief, it was the representation made to both the Stotts and LDH that Dula and EA intended to spend all the remaing money on attempting to develop a commercial space business that caused them to sell out so cheaply, given their minority shareholder positions in EL and EA, respectively. Dula was actually challenged at a Board meeting by Directors Gruver and Chiao, and as a result, Dula agreed to state in writing that he had "no present intention to dissolve the company and take the money for himself." But it was a lie, stated only to get the Board to approve the LDH transaction, as was later proven when Defendant Dula stated to the Board that he now intended to dissolve the company, when it would still have substantial cash, plus the space hardware still carried on the books at over $5 million (but which Dula had opined at the time may be far more valuable if sold to be utilized as donated

17

museum pieces for wealthy individuals who could benefit from the substantial tax advantages of such transactions).

## XXXI.

On information and belief, faced with these admissions from Dula, Director Chiao called for a special Board meeting to put forth a resolution to prohibit Dula from disolving the enterprise and selling off the space hardware, because of the liability that would arise given the earlier false representations to the Stotts and LDH to secure the lop-sided buy out deals. This resolution was supported by Director Okubo. Defendants Dula and Hightower, along with CFO Gruver, voted to defeat the resolution with Friedman giving support to Dula. The next day Directors Chiao and Okubo were removed from the Board by a vote of the shareholders, Defendants Dula and Hightower. Director Chiao resigned from the enterprise altogether shortly thereafter, including from his employment.

## XXXII.

Upon information and belief, at least one employee of EA USA petitioned the CFO, Richard Gruver, in accordance with Company procedures, to have the Board of Directors direct that Defendant Dula fix the fraud he had perpetrated by obtaining revised contracts with NPOM to allow modifcation of the Almaz spacecraft so that they could be refurbished and flown, as initially represented to Plaintiff Horie to induce his $49 million investment. CFO Gruver passed the petition to Defendant Hightower, who, presumably in concert with Defendant Dula, terminated the employment of that employee.

## XXXIII.

Now recent events at the May 2014 auction make it clear that Defendant Dula intended to dissolve EA and take the substantial assets for himself and his annoited co-shareholder in EL,

18

Certified Document Number: 63120901 - Page 18 of 28

Defendant Buckner Hightower, in contravention of the express representations made to Plaintiff Horie. Plaintiff Horie did not suspect until recently that the reason no milestone had been accomplished under his initial investment contract was because the Russian space hardware that Defendant Dula had represented that EA owned, had limited uses, i.e., as museum pieces. Defendant Dula knew all along that he had purchased only the rights to use two Almaz capsules and two spacestations for the purpose of display and marketing, and legally, under his contracts with the Russians, could not modify them for flight. Dula has bought on numerous occasions additional spacecraft under the same limited terms, while representing the opposite to his investor, employees, and potential customers. In addition, Defendant Dula may have acquired even these limited rights by violating the Foreign Corrupt Practices Act, as explained above, which would also void those contracts. Dula's fraud was intentional, malicious, and warrants punitive damages. Further, the exemplary damages are not capped because the conduct of Dula falls withing Tex. Civ. Pract. Rem. Code Section 41.008(c).

XXXIV.

Had Mr. Horie known at the time that Defendant Dula was lying about the ownership of the space hardware he had acquired from NPOM for EA, and that EA could never complete any of the milestones, he would never had invested a penny with Dula, never would have authorized funds to leave Dula's trust, would have never reduced his equity position, and would have dissolved EA pursuant to IOM law (as was his absolute right as a 75% equity owner) and recovered his $45 million in cash, plus whatever value the space hardware would have had as museum pieces. This is precisely what Defendant Dula feared might happen – thus he lied repeatedly to Plaintiff Horie to keep his enterprise intact.

Certified Document Number: 63120901 - Page 19 of 28

## CAUSES OF ACTION

1. **Joint and Several Liability:** Defendant Dula owns and/or has controlled each of the Corporated Defendants (EL, EA, and EA USA) and the Defendant Heinlein Prize Trust during the relevant time period, and as such committed the acts complained of herein through one or all of them at various times, such that those entities have joint and several liability herein. Defendant Dula has also operated the Corporate Defendants as his alter-ego from his offices in Houston, Texas; thus, they each bear the same liability for his acts as does Defendant Dula. From the beginning, Defendant Buckner Hightower, as Dula's friend, as a co-trustee of the Heinlein Prize Trust, and later as an equity participant in Defendant EA, has supported and conspired with Defendant Dula to further and cover up the wrongful acts of Dula, as set forth herein. Each of the causes of action herein is pled against all Defendants, individually and collectively.

2. **Breach of Trust, Constructive Trust, Resulting Trust**. All actions taken by Dula were with funds he held for Plaintiff in trust. Actions with respect to the Trust funds were taken without authority or effective consent. Therefore, all monies and assets acquired by any of the Defendants are held in a Constructive/Resulting Trust for Plaintiff and should be delivered to Plaintiff. Plaintiff is also entitled to damages for assets squandered or lost in violation of the trust(s).

3. **Violation of Rights under the Isle of Man Company Acts:** Defendants have violated the rights of Plaintiff Horie under the Isle of Man Company Acts of 1931 and 2006.

4. Under each Act, a 75% shareholder has the right to dissolve an IOM company. Had Plaintiff Horie been told the truth about the legal inability of EA to accomplish the purpose for

Certified Document Number: 63120901 - Page 20 of 28

which he was enticed to invest before he was forced to reduce his interest to 34%, Plaintiff Horie could have dissolved EA and recovered his investment.

5. Under Section 162(6) of the Isle of Man Company Act of 1931, the court may order that a company be wound up and its assets distrubuted to its shareholders if it is of the opinion that it is "just and equitable" to do so. Had Plaintiff Horie been informed by Defendants that EA did not own sufficient rights in the spacecraft hardware to permit modifying them for flight, he would have petitioned the court for a "just and equitable" winding up . This would have allowed recovery of substantial cash and assets, with which he could have better settled his financial difficulties at the time. Had Plaintiff Horie known the truth, he could have immediately petitioned the court for a "just and equitable" winding up, thereby recouping most of his investment. Defendant Dula knew this posed a risk to accomplishing his plans to control and takeover for himself the entireity of Plaintiff's investment, and thus he concealed the truth from Plaintiff Horie, and later the other minority shareholders in EL and EA, and his employees.

6. Under Section 180 of the Isle of Man Company Act of 2006, a shareholder is entitled to petition the court for involuntary dissolution if the company has been operated in a way which is or might become "oppressive or unfairly prejudicial" to him. Additionally, under Section 197 of the Act a shareholder may petition the court to gather evidence in support of such involuntary dissolution, where the business was formed or is being conducted dishonestly or with the intent to defraud, or is associated with any other entity or person engaged in fraud or deceit. The 2006 Act expressly adopts the provisions of the 1931 Act in executing involuntary dissolution, and it would be handled under Section 162(6) of the 1931 Act as a "just and equitable" winding up of the company. As Horie's attorney Dula should have advised of his legal rights and remedies. As to the conflict of interest that existed between Dula the attorney and Dula the individual

21

attempting to steal Horie's money, Dula had a duty to advised him to obtain separate independent legal counsel. Directing Horie to get legal advice from Friedman in Dula's office did not solve the problem.

7.      Thus, regardless of which Act the Defendant companies were incorporated under, or later re-registered, both EA and EL were subject to a "just and equitable" winding up at any time on a petition by a minority shareholder. Plaintiff Horie was a shareholder of record in EA until after Dula fraudulently advised him to assign the remainder of his EA investment to a Trust and Dula's business associate Trustee and later to LDH. But for Defenadant Dula's fraud and breach of fiduciary duty to Plaintiff Horie, he could have effected the dissolution of EA and recouped his entire investment of $49 million. After the transfer of the remainder of his EA investment to LDH, Plaintiff Horie today remains entitled, at a minimum, to actual damages measured by the difference between his initial investment and the market value of EA at the time of the transfer. Thus, Plaintiff Horie is now entitled to actual damages.

8.      **Fraud:** Defendants have commited fraud by inducing Plaintiff Horie to invest and to later reduce his equity ownership in EA from 75% to 34% by false and material misrepresentations of material fact and by failure to reveal material facts, as set forth herein. Mr. Horie relied to his detriment on the misrepresentations and failures to reveal material facts to effectively sell out his controlling interest in EA and become a minority shareholder, and to forego his right under Isle of Man law to have dissolved the corporation at that time and recover his investment.

9.      Upon information and belief, Defendants furthered the fraud by inducing the Stotts and LDH to sell out their interest in EL and EA by false and material misrepresentations of material fact and by failure to reveal material facts, as set forth herein. The Stotts and LDH relied to their

Certified Document Number: 63120901 - Page 22 of 28

22

detriment on the misprepresentations and failures to reveal material facts to sell out their interests to Defendants for less than 3% of its then true liquid value. Though the Stotts and LDH signed releases of all claims in connection with their respective buy-outs, both contracts are void for having been fraudulently induced by express material misrepresentations made a part of the deal to bolster the oral misrepresentations that were made to get each of the parties to negotiatiate the lop-sided deals in the first place, all as described above herein. "*Fraus omnia corrumpit*: fraud vitiates everything it touches."

10. Thus, Plaintiff Horie and the putative minority shareholders have suffered damage as a direct result of Defendants' fraudulent conduct. Defendant Dula's dishonest conduct was and remains egregious, unlawful and unethical, and should be punished by the assessment of punitive damages.

11. **Breach of Fiduciary Duty:** Defendant Dula as Horie's lawyer and trustee breached his fiduciary duty to his investor and shareholder Plaintiff Horie by enticing him to invest in the first place, and then later misleading him into selling out his controlling interest in EA by negotiationing with him in bad faith and on the basis of fraudulent statements and failure to reveal facts within his knowledge relevant to the consideration of the transaction proposed by Defendant Dula, whereby Plaintiff drastically reduced his equity ownership in EA, as set out herein. Had Defendant Dula been honest with his client and investor Plaintiff Horie, it would have allowed Horie the opportunity to dissolve EA and recoup his entire investment. After having assigned the remainder of his EA stock to LDH, Plaintiff Horie is now entitled to recoup that part of his investment measured by the difference between the initial investment and the true market value of EA at the time of the transaction with LDH, as set out above.

Certified Document Number: 63120901 - Page 23 of 28

23

12. Defendant Dula also breached his fiduciary duty to his minority shareholders LDH and the Stotts by misleading them into selling out their interests in EL and EA at an unconscionably low price by negotiating with them in bad faith and on the basis of fraudulent statements and failure to reveal facts within his knowledge relevant to the consideration of the buy out transaction proposed by majority shareholder Dula.

13. Defendant Dula has also wasted the assets of the Defendant enterprises.

14. All these actions by Defendant Dula have caused damage to Plaintiff Horie, LDH, and the Stotts, and further his conduct is dishonest and unethical and should be punished by the assessment of punitive damages.

15. **Statutory Fraud:** Defendants have commited statutory fraud by violating the provisions of TEX. BUS. & COMM. CODE § 27.01 by inducing Plaintiff Horie to invest, to later sell out his controlling equity position in the stock of the corporation EA, and to then support and approve the transaction by which LDH was bought out, all by false misrepresentations of past or existing material facts or by false promises to do an act in the future, all as set out herein.

16. Defendants are liable for the actual damages of Plaintiff Horie for reasonable and necessary attorney's fees, expert witness fees, costs of copies of depositions, and costs of court. Defendant Dula caused the mispresentations and false promises to made with actual awareness that they were false, and as a result Defendants are liable for exemplary damages.

17. **Breach of Contract:** Plaintiff Horie entered into an original investment contract, which was later modified based upon false representations and breaches of fiduciary duty to reduce his equity position and to implement other terms favorable to Defendants. Upon advice of Dula, Plaintiff placed his stock interest in a Trust with Dula's business associate. Thereafter, LDH sold its EA stock position to Defendant Dula, **HIMSELF**, by way of a stock redemption

24

agreement to which Horie was a necessary party. This agreement purported to replace the prior investment contract. At no time did Plaintiff Horie transfer or assign his rights to claims asserted herein. Moreover, all of these contracts are voidable at the discretion of Plaintiff, in whole or in part, because they were induced by fraud. Defendants Dula and the Corporate Defendants have breached the investment contracts by which Plaintiff Horie made his original investment and by which he was later induced to reduce his equity position, and later allow transfer of that stock position, as set out herein. Thus, Defendants are liable to Plaintiff Horie for damages, attorneys' fees and interest as allowed by law, and alternatively, rescission of the investment agreements.

18. **Texas Securities Act:** Defendants have violated Article 581-33(B) of the Texas Securities Act ("TSA") by purchasing Plaintiff Horie's interest in EA "by means of an untrue statement of material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading," as set out herein.

19. Defendant Dula, aided and abetted by the Corporate Defendants, has also violated Article 581-33(B) of the Texas Securities Act ("TSA") by purchasing the Stotts' interest in EL and LDH's interest in EA "by means of an untrue statement of material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading," as set out herein.

20. The TSA is a strict liability statute with no scienter requirement on the part of the buyer (the Defendants herein) and no reliance or causation requirements on the part of the seller (Plaintiff Horie and LDH). The TSA is to be construed "to protect investors" and "because article 581-33 is remedial in nature in the civil context, it 'should be given the widest possible scope.'

25

21. Defendants are strictly liable for rescission damages under the TSA to Plaintiff Horie and LDH as sellers in the amount of the value of the securities at the time of the transaction in question plus any income received by Defendants, less the consideration already paid to the LDH, plus costs and attorney's fees. Art. 581-33(D)(4)(6)(7). Further, the rights and remedies under the TSA "are in addition to any other rights (including exemplary or punitive damages) or remedies that may exist at law or in equity." Art. 581-33(M).

22. **Piercing the Corporate Veil:** For the purpose of each cause of action the corporate veil between EA, EL, and EA USA may be pierced on behalf of Plaintiff and LDH, because Defendant Dula effectively controlled each corporation and operated them as his alter-ego to commit the acts complained of herein. Indeed, Defendant Dula used the separate corporate EL structure to prevent Horie or LDH to over-ride his control of EA, thus allowing Defendant Dula to execute his fraudulent plan.

23. **Monies Had and Received:** The Defendants have been unjustly enriched by appropriating Plaintiff's funds. Accordingly, Defendants are liable to Plaintiff for monies had and received and unjust enrichment.

24. **Statutory Theft and/or Conversion:** The conduct of the Defendants gives rise to a claim under Chapter 134 of the Texas Civil Practice & Remedies Code and/or conversion. Plaintiff is entitled to his actual damages, expemplary damages and pursuant to Chapter 134 reasonable attorney fees.

25. **Accounting:** Plaintiff is entitled to an accounting of funds placed in trust with the Defendants.

Certified Document Number: 63120901 - Page 26 of 28

26. **Negligence:** The conduct of the Defendants was negligent. Defendants owed Plaintiff a duty of ordinary care, and breached that duty causing Plaintiff damages in excess of the minimum jurisdictional amounts of this court.

27. **Joinder:** In the alternative, Plaintiff Horie joins LDH as a Plaintiff herein pursuant to Rule 39, Texas Rules of Civil Procedure, because it may be necessary as a practical matter to protect its interests and prevent persons already parties from incurring the risk of multiple or inconsistent recoveries.

XXXVI.

## **JURY TRIAL DEMAND**

28. Plaintiff requests a trial by jury.

**Prayer**

Plaintiff Horie d/b/a Japan Space Dream respectfully requests that the Court grant the relief requested for actual damages, for punitive and exemplary damages as allowed by law, prejudgment and post-judgment interest as allowed by law, attorneys' fees as allowed by law, and such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

The Kelley Law Firm

By: */s/ Lloyd E. Kelley*
Lloyd E. Kelley
Texas Bar No. 11203180
kelley@lloydkelley.com
The Kelley Law Firm
2726 Bissonnet, Suite 240, PMB 12
Houston, TX 77005
(281) 492-7766 (main)
(281) 652-5973 (fax)

Certified Document Number: 63120901 - Page 27 of 28

27

James D. Pierce, Attorney At Law

By: */s/ James D. Pierce*_____
James D. Pierce
Texas Bar No. 15994500
jim@jamespierce.com
1 Sugar Creek Center, Suite 1080
Sugar Land, TX 77478
(713) 650-0150 (main)
(713) 650-0146 (fax)

**ATTORNEYS FOR**
Plaintiff Takafumi Horie d/b/a
Japan Space Dream

28

Certified Document Number: 63120901 - Page 28 of 28



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this    June 5, 2015

Certified Document Number:        63120901 Total Pages:  28

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

**CAUSE NO. 2014-65947**

| | | |
|---|---|---|
| TAKAFUMI HORIE, | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | HARRIS COUNTY, TEXAS |
| THE LAW OFFICES OF ART DULA, | § | |
| ARTHUR M. DULA, individually, and d/b/a | § | |
| THE LAW OFFICES OF ART DULA, | § | |
| ANAT FRIEDMAN, individually, and d/b/a | § | |
| THE LAW OFFICES OF ART DULA, | § | |
| J. BUCKNER HIGHTOWER, | § | |
| THE ROBERT A. AND VIRGINIA | § | |
| HEINLEIN PRIZE TRUST, through its | § | |
| trustees ARTHUR M. DULA AND | § | |
| J. BUCKNER HIGHTOWER, | § | |
| | § | |
| Defendants. | § | 55 TH DISTRICT COURT |

**PLAINTIFF'S FIRST AMENDED PETITION**

**I.**

**INTRODUCTION**

Takafumi Horie, individually and d/b/a Japan Space Dream, ("Horie") files this Amended Original Petition against Defendants Arthur M. Dula, individually and d/b/a The Law Offices of Art Dula, and Anat Friedman, individually and d/b/a The Law Offices of Art Dula, and The Robert A. and Virginia Heinlein Prize Trust, through its trustees Arthur M Dula and J. Buckner Hightower for breach of fiduciary duty, fraud, statutory fraud, breach of trust, money had and received, an accounting, and negligence, and alleges as follows:

Certified Document Number: 64525805 - Page 1 of 13

76

II.

**CASE SUMMARY**

This is a case about Houston attorney Art Dula, who took advantage of Japanese entrepreneur Takafumi Horie, by claiming that he could set up a commercial space transportation program to carry cargo, scientific experiments, and people into low Earth orbit to the International Space Station and other space destinations. Dula was, and is, the lawyer and a trustee for The Robert A. and Virginia Heinlein Prize Trust ("Heinlein Trust"). Heinlein was a prolific science fiction author who was famous for writing about manned space exploration. Dula used his position as trustee of the Heinlein Trust to promote his law firm in getting business under the premise of establishing "new space business enterprises." Using his position as trustee of the Heinlein Trust, Dula, through an intermediary, sought out Horie and solicited him as a client and investor. Horie offered his services as a "space" lawyer who could set up entities to make space travel possible and fraudulenty induced Plaintiff to trust him and give him $49 million in trust to further this enterprise of space travel.

III.

Horie engaged Dula as his attorney, and then trusted him enough to give Dula $49,003,000.00 in trust for purposes of setting up a business to accomplish space travel. The money was sent to Dula's Texas IOLTA client trust fund account to accomplish the goals for Dula's client Horie. Art Dula misapproiated funds to engage in a scheme to steal Plaintiffs' money and divert it to himself and his conspirators. In reliance on Dula's promises that Plaintiff's investment would be used to establish a cutting-edge, profitable commercial spaceflight program, Horie engaged Dula as his attorney. Horie subsequently gave Dula $49,003,000.00, which Horie sent to Dula's Texas IOLTA client trust fund account. However, Dula never intended to engage in a

Certified Document Number: 64525805 - Page 2 of 13

77

commercial space program, and in fact continually misrepresented, concealed facts and defrauded his client Takafumie Horie d/b/a Japanese Space Dream ("Horie"). His intent was to take his clients' money over time through a complex scheme under the guise that he was building a space program.

IV.

Dula has gone to great lengths to hide and conceal his true conduct by acts of both commission and omission, all of which would constitute fraud if perpetrated under the normal morals of the marketplace but which also constitute breach of fiduciary duty when undertaken in the context of the attorney-client relationship. Horie only recently discovered the wrongs perpetrated against him by Defendants, because, in violation of his fiduciary duties to Horie, Dula never disclosed the true facts to him, but rather continually mispresented and/or concealed those facts throughout their relationship. Horie relied on and trusted Dula as his attorney, his fiduciary, and as an apparent expert in the nascent field of private spaceflight. Dula took advantage of his position as Horie's attorney and a self-proclaimed expert to convert his clients' funds for his own uses and purposes. Accordingly, to the extent Defendants plead the statute of limitations as a defense to any of Horie's claims, Horie is entitled to the benefit of the discovery rule. Horie further pleads that Defendants fraudulently concealed their misconduct, which excuses the failure to sue within the limitations period.

Plaintiff Horie only recently discovered the wrongs perpetrated against him by Defendants, because the facts were concealed by Defendant Dula, and Dula never advised Horie of his wrong doing. Plaintiff relied on and trusted Defendant Dula in Dula's position as his attorney, his fiduciary, and because of his representations as to his expertise concerning his spaceflight project and his investment therein. The Defendants had a fiduciary duty to Plaintiff

Certified Document Number: 64525805 - Page 3 of 13

and Defendants fraudulently concealed the facts to prevent Plaintiff from learning of their fraudulent behavior and to prevent Plaintiff from seeking legal redress. Alternatively, Defendants owed Plaintiff a fiduciary duty and they failed to disclose facts they were aware of which prevented Plaintiff from bringing suit earlier.

V.

Plaintiff Horie became aware of Dula's scam when he read an article by Alexander Forbes that Dula had sold at auction one of the spacecraft articles purchased with Plaintiff's money. The Forbes article implied that Dula was liquidating, and indicated the spacecraft was only suitable for display in a museum, and not as a potential flight article as had been falsely represented to Plaintiff Horie from the beginning. The supposed space program was a sham, as Dula never had the rights or ability to utilize the spacecraft purchased with Plaintiff's money for anything other than display purposes. However, this fact was kept secret from Plaintiff. Plaintiff never authorized the funds held in trust be utilized to purchase spacecraft sold for display purposes. Plaintiff never authorized funds held in trust to be utilized to set up a "space program" incapable of space travel. Plaintiff never authorized funds held in trust to be utilized to set up a business other than a true "space business enterprise." Had this information been known to Plaintiff, he would have never given any money to Defendants in the first place, and if known after he had placed his money in trust to Dula, Plaintiff would have immediately petitioned for redress.

By additional fraudulent acts, Dula ultimately obtained complete control of Plaintiff's funds and has utilized them for his own benefit, and, on information and belief, has fraudulently transferred the funds to his wife, Tamea, a prominent Houston lawyer, and his children Russell and Austin. The continuing fraud and breach of fiduciary duty has damaged Plaintiff in excess of the minimum jurisdictional amounts of this court.

4

Certified Document Number: 64525805 - Page 4 of 13

Plaintiff Horie seeks by this suit to recover damages, acutal and consequential, of the monies Defendants took and which the law treats now as held in trust for Plaintiff, and to obtain other damages allowed by law for himself.

VII.

## DISCOVERY LEVEL AND REQUEST FOR DISCLOSURE

Discovery should to be conducted under Level 3 pursuant to Texas Rule of Civil Procedure 190.3.  Plaintiff requests disclosure of the items set forth in Tex. R. Civ. P. 194.2 a-k.

VIII.

## PARTIES

A. Plaintiff Takafumi Horie is a citizen and resident of Japan, and at all relevant times was doing business as Japan Space Dream.  Horie was solicited in Japan from Texas  lawyer Defendant Art Dula to invest US $49,003,000.00 for creation of a private operating spaceflight program.

B. Defendant Arthur M. Dula, individually and d/b/a the Law Office of Art Dula, is a resident of Houston, Harris County, Texas.  Defendant has appeared and answered herein.

C. Defendant Anat Friedman is a lawyer at the law office of Art Dula and is a resident of Houston, Harris County, Texas.  Defendant has appeared and answered herein.

D. Defendant Robert A. and Virginia Heinlein Prize Trust ("Heinlein Prize Trust") Houston, Harris County, Texas.  Defendant has appeared and answered herein.

E. Defendant J. Buckner Hightower is a Texas citizen and resident.  Defendant Hightower conspired, aided and abetted and/or facilitated Defendant Dula in committing and concealing the

Certified Document Number: 64525805 - Page 5 of 13

5

80

illegal acts complained of herein. He engaged in actions designed to cover up and keep facts secret from the public auditors and the government. He has been served and answered.

## <u>JURISDICTION</u>

This Court has subject matter jurisdiction over this dispute because the amount in controversy exceeds its jurisdictional threshold. See Tex. Gov't Code Ann. §§ 24.007 - 24.008.

This Court has personal jurisdiction over Defendants because: (1) they are actively engaged in business in the State of Texas; (2) they reside in the State of Texas; and/or (3) they committed torts and statutory violations in whole or in part in this state. See Tex. Civ. Prac. & Rem. Code § 17.042.

Venue is proper under Tex. Civ. Prac. & Rem. Code § 15.002. All or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this County.

X.

## <u>FACTUAL BACKGROUND</u>

The Plaintiff is a Japanese citizen, who was interested in the development and advancements in space exploration. Art Dula sought Plaintiff out, representing that he was a "space attorney" who could assist Plaintiff in the development of a space program. Dula requested that Horie give him approximately $50,000,000 in trust, so that Dula could facilitate Plaintiff's dream of developing a private commercial space program. Dula represented he had connections with the Russian aerospace company NPO Mashinostroyenia ("NPOM") who would provide hardware and technical expertise to build a commercial space business. He represented that he had acquired rights to NPOM space-proven capsules that could be used in a space program. Dula represented that he was well-connected and could assemble the professionals necessary to build a

6

81

commercial space program. However, from the beginning, Dula had no intent to build a space program, but only to take Plaintiff's monies for his own use, utilizing a complex ruse, contrary to the interests of his *cestui que trust*. Dula convinced Plaintiff to place $49,003,000.00 into Dula's trust account for purposes of doing due diligence, and later setting up a space program in conformity with U.S. law and regulations (Dula claimed and continues to claim to be a "space law" expert). Dula used several schemes and devices to fraudulently take Plaintiff's money out of the IOLTA trust account and eventually placed it into his own hands in violation of his duty of utmost trust.

## XI.

Using Plaintiff's funds, Dula purchased four Almaz spacecraft capsules and two space stations from NPOM. This space hardware came from a Soviet-era secret space program, and Dula represented to Plaintiff that a key advantage was that the spacecraft and space stations being acquired had undergone rigourous flight testing. He represented to Plaintff and others that the hardware could be made "flight worthy," and that he could refurbish, modify and update the equipment so that it would be certified for flight. The purchase contracts had to be approved by the Russian government, and unbeknownst to Plaintiff and on information and belief, expressly excluded the right to modify the Russian hardware, thus relegating it **to display uses only**! The items were only museum pieces, a secret Dula would keep until well after he acquired control of Plaintiff's investment.

## XII.

Dula took Horie's money out of the IOLTA trust account and used it improperly. Dula first wired the funds to an account that he controlled. At the time he solicited the investment from Plaintiff, Defendant Dula was a lawyer licensed in Texas, who held himself out as an expert in

7

Certified Document Number: 64525805 - Page 7 of 13

82

"space law," in properly establishing and organizing space enterprises, in advising concerning contracts with NASA, and in negotiating and drafting "space agreements." Dula drafted a "Private Placement Memorandum" which he represented to Plaintiff was a part of the legal documentation necessary to create a legal space program which he represented to be a proper "space agreement" to establish a "space enterprise." Per Dula's instructions, Plaintiff wired over time $49,003,000.00 to Dula's attorney trust account in Houston, Texas. Thereafter, Defendant Dula transferred the money to an account Dula controlled. Later, on information and belief, funds were sent to his wife Tamea and his children Russell and Austin Dula.

Being a part of a real space program was Plaintiff's dream, and if that could be achieved the ownership percentages were insignificant compared to being involved in a pioneering new business. Further, Plaintiff trusted Dula to act in Plaintiff's best interests, and relied on his representations that a space program would be created. In fact the milestones and spaceflight in general could never be accomplished, and Dula knew at the time he made the representations the milestones could not be accomplished. The representations made to Plaintiff were false and Dula omitted to state facts necessary to make the statements that were made not misleading. However, in reliance on the truth of the misrepresentations and that Dula would continue to act in Plaintiff's best interest and build a space venture, Plaintiff continued to believe him and took no action to seek redress. In fact, Dula intentionaly gave Plaintiff false information to prevent Plaintiff from filing suit.

### XIII.

Breaching his fiduciary duty, Dula "magically" transformed Horie's entire initial investment remaining at that time – upon informantion and belief over $34 million – into his own name. But Dula had to lie again to get it done.

8

Dula knew all along that his representations to Plaintiff were false. Dula knew that the contracts that supposedly gave the space program ownership of the Russian space hardware only transferred ownership rights for the purpose of displaying the hardware, e.g., at air shows, trade shows or in museums. Thus, Defendants never acquired any rights to the capsules necessary to refurbish and modify them in order to certify them to fly humans in space. Without such rights, the representation that they owned or were acquiring the space hardware to accomplish the objectives of the enterprise was false.

## XIV.

Because the Russian space hardware that Defendant Dula represented could be owned completely and modified for space use turned out to have limited/restricted uses, i.e., as museum pieces, the entire scheme was a scam. Defendant Dula knew all along that he could only acquire the rights to use two Almaz capsules and two spacestations for the purpose of display and marketing, and legally, under the contracts with the Russians he eventually obtained he could never modify them for flight. Dula has bought on numerous occasions additional spacecraft under the same limited terms, while representing the opposite to Plaintiff and others. Dula's fraud was intentional, malicious, and warrants punitive damages. Further, the exemplary damages are not capped because the conduct of Dula falls within Tex. Civ. Pract. Rem. Code Section 41.008(c).

## XV.

Had Mr. Horie known at the time that Defendant Dula was lying about the ownership of the space hardware he eventually acquired from NPOM, he would have never invested a penny with Dula, and never would have authorized funds to leave Dula's trust. Plaintiff seeks to recover his $45 million in cash, plus whatever value the space hardware would have had as museum pieces.

Certified Document Number: 64525805 - Page 9 of 13

9

This is precisely what Defendant Dula feared might happen – thus Dula lied repeatedly to Plaintiff Horie to keep his enterprise intact.

## XVI.

## CAUSES OF ACTION

1. **Claims:** Horie brings suit against Defendants for breach of trust, fraud, and statutory fraud, breach of fiduciary duty, monies had and received, an accounting, and for negligence. Plaintiff seeks rescission/damages in the amount of his $49,003,000.00 original investment, plus interest, attorneys' fees, and damages allowed at law or equity, including punitive damages.

2. **Joint and Several Liability:** Defendant Dula owns has controlled the Defendant Heinlein Prize Trust during the relevant time period, and as such committed the acts complained of herein through one or all of them at various times, such that those entities have joint and several liability herein. Defendant Dula has also operated the Heinlein Prize Trust as his alter-ego from his offices in Houston, Texas; thus, it bears the same liability for his acts as does Defendant Dula. From the beginning, Defendant Buckner Hightower, as Dula's friend, as a co-trustee of the Heinlein Prize Trust, has supported and conspired with Defendant Dula to further and cover up the wrongful acts of Dula, as set forth herein. Each of the causes of action herein is pled against all Defendants, individually and collectively.

3. **Breach of Trust, Constructive Trust, Resulting Trust**. All actions taken by Dula were with funds he held for Plaintiff in trust. Actions with respect to the Trust funds were taken without authority or effective consent. Therefore, all monies and assets acquired by any of the Defendants are held in a Constructive/Resulting Trust for Plaintiff and should be delivered to Plaintiff. Plaintiff is also entitled to damages for assets squandered or lost in violation of the trust(s).

10

Certified Document Number: 64525805 - Page 10 of 13

4. **Fraud and Statutory Fraud:** Defendants have commited fraud by inducing Plaintiff Horie to given in trust money to Dula by false and material misrepresentations of material fact and by failure to reveal material facts, as set forth herein. Mr. Horie relied to his detriment on the misrepresentations and failures to reveal material facts of Dula. Plaintiff sues Defendants for fraud and statutory fraud (TEX. BUS. & COMM. CODE § 27.01).

5. "*Fraus omnia corrumpit*: fraud vitiates everything it touches. Thus, Plaintiff has suffered damage as a direct result of Defendants' fraudulent conduct. Defendant Dula's dishonest conduct was and remains egregious, unlawful and unethical, and should be punished by the assessment of punitive damages.

6. **Breach of Fiduciary Duty:** Defendant Dula as Horie's lawyer and trustee breached his fiduciary duty to his client Plaintiff by enticing him to give in trust his money amounting to $49 millon in the first place, and then later misleading him to prevent Plaintiff from realizing the extent of the breach of fiduciary duty to prevent him from filing a suit.

7. All these actions by Defendant Dula have caused damage to Plaintiff and further his conduct is dishonest and unethical and should be punished by the assessment of punitive damages.

8. The continuing fraud and breach of fiduciary duty has damaged Horie in excess of the minimum jurisdictional amounts of this court.

9. **Monies Had and Received:** The Defendants have been unjustly enriched by appropriating Plaintiff's funds. Accordingly, Defendants are liable to Plaintiff for monies had and received and unjust enrichment.

10. **Accounting:** Plaintiff is entitled to an accounting of funds placed in trust with the Defendants.

11

Certified Document Number: 64525805 - Page 11 of 13

86

11. **Negligence:** The conduct of the Defendants was negligent. Defendants owed Plaintiff a duty of ordinary care, and breached that duty causing Plaintiff damages in excess of the minimum jurisdictional amounts of this court.

XVII.

**JURY TRIAL DEMAND**

12. Plaintiff requests a trial by jury.

**Prayer**

Plaintiff Horie d/b/a Japan Space Dream respectfully requests that the Court grant the relief requested for actual damages, for punitive and exemplary damages as allowed by law, prejudgment and post-judgment interest as allowed by law, attorneys' fees as allowed by law, and such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

The Kelley Law Firm

By: */s/ Lloyd E. Kelley*
Lloyd E. Kelley
Texas Bar No. 11203180
kelley@lloydkelley.com
2726 Bissonnet, Suite 240, PMB 12
Houston, TX 77005
(281) 492-7766 (main)
(281) 652-5973 (fax)

James D. Pierce, Attorney At Law

By: */s/ James D. Pierce*
James D. Pierce
Texas Bar No. 15994500
jim@jamespierce.com

12

Certified Document Number: 64525805 - Page 12 of 13

1 Sugar Creek Center, Suite 1080
Sugar Land, TX 77478
(713) 650-0150 (main)
(713) 650-0146 (fax)

**ATTORNEYS FOR**
Plaintiff Takafumi Horie d/b/a
Japan Space Dream

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record via electronic filing and or e-mail on this the 6th day of March 2015.

*/s/: Lloyd E. Kelley* _____
LLOYD E. KELLEY

Certified Document Number: 64525805 - Page 13 of 13

13



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this    June 5, 2015

Certified Document Number:        64525805 Total Pages:  13

*Chris Daniel*

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

89

# TAB C

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUMES
TRIAL COURT CAUSE NO. 20140=-65927

TAKAFUMI HORIE ) IN THE DISTRICT COURT
)
vs. ) HARRIS COUNTY, TEXAS
)
THE LAW OFFICES OF ART
DULA, ET AL
) 55TH JUDICIAL DISTRICT

_____

**MOTION TO DISMISS**

_____

On the 20th day of April, 2015, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Jeff Shadwick, Judge Presiding, held in Houston, Harris County, Texas.

Proceedings reported by computerized stenotype machine.

Motion to Dismiss
*April 20, 2015*

**APPEARANCES**

Lloyd E. Kelley
SBOT NO. 11203180
The Kelley Law Firm
3726 Bissonnet, Suite 240
PMB 12
Houston, Tx 77005
Telephone:  281.492.7766
Fax:  281.652.5973
E-mail:  kelley@lloydkelley.com
Attorney for Plaintiff

James D. Pierce
SBOT NO. 15994500
1 Sugar Creek Center, Suite 1080
Sugar Land, Tx 77478
Telephone:  713.650.0150
Fax:  713.650.0146
E-mail:  jim@jamespierce.com
Attorney for Plaintiff

Michael R. Levin
SBOT NO. 0351326
Baker & Hostetler LLP
200 South Orange Avenue
Sun Trust Center, Suite 2300
Orlando, FL 32801
Telephone:  407.649.4000
Fax:  407.841.0168
Counsel for Defendants

Joshua C. Thomas
SBOT NO. 24027428
Baker & Hostetler LLP
811 Main, Suite 1100
Houston, Tx 77002-6111
Telephone:  713.751.1600
Fax:  713.751.1717
E-mail:  jthomas@bakerlaw.com
Counsel for Defendants

THE COURT: I'm going to put this on the record because we might want to refer back to this later.

This is Case No. 2014-65947, Horie -- am I pronouncing that right -- verses Law Offices of Art Dula. Can I get appearances, please?

MR. KELLEY: Lloyd Kelley for the plaintiffs and James Pierce.

MR. LEVIN: For the defendants, Michael Levin of Baker Hostetler. With me is my colleague Josh Thomas.

THE COURT: I've got a motion to continue this hearing because you wanted to take Mr. Dula's depo.

MR. KELLEY: And the latest on her affidavit with her name on it, Annese -- Annette Fronot.

THE COURT: Then the substantive motion, motion to dismiss based upon the forum clause?

MR. LEVIN: Yes.

THE COURT: Okay. Let me just throw my thoughts out there. You know my practice -- and you've been here before and whoever doesn't like what I just said, comment.

I'm not sure I understand why you need to take anybody's deposition to decide whether or not there is a

forum selection clause that would cause me to read on the motion to dismiss. I read that your reason is that you think there may be some fraud involved in it. But my look at the case law was, I'm not sure that fraud gets you out of the forum selection clause. So I'm going to want you to talk to me why you need to take -- what are you looking for in this deposition that would help -- that you need to know or what at least suspect?

MR. KELLEY: We have objected to their evidence. We looked at it today in the lighter posture, they have no evidence to support their forum selection clause.

THE COURT: Okay. So, but we do have the agreement that was signed, right?

MR. KELLEY: We are not -- they have nothing to support that. They have an affidavit which purports to be a business record, and we've objected to that affidavit. We think it's defective. Even past that, they don't have anything to connect any of the facts that they have got to that contract. I'll give you an example.

THE COURT: The cause of action is not related to the agreement.

MR. KELLEY: Oh, better yet. The parties. The Heinlein Trust, when you look at the Heinlein Trust

as a defendant and you look in that contract, you will never find it.

THE COURT: This is the question for these guys. The thing I want you guys to talk about is how is it that these -- where do I find these parties on the agreement? Like Mrs. Dula, for example. The defendant is "the law office of." Then I saw that he signed the agreement, but he signed it in capacity as -- I've forgotten now.

MR. LEVIN: Two points, Your Honor. First, the contract is not hearsay. If we need case law, I have it, but under Texas law, the contract is not hearsay; therefore, their objection to the contract is moot but --

THE COURT: Before I do that, can I ask you a question? Is this a situation where this contract is coming in. I mean, I want to make sure I don't think this is just a technical objection.

MR. KELLEY: It's a technical objection.

THE COURT: So, assuming that they remember how to practice law and they lay the foundation and they have the right affidavit and the document is in. Then let's just in our mind jump to that spot, the document is in. It does have a forum selection clause, which would cause me to move it, and so then --

MR. KELLEY:  For certain parties.

MR. LEVIN:  Let me get to the parties.

THE COURT:  So, the question is -- once we get to the substance, the question is, are these parties and this cause of action subject to that contract which has the forum selection clause.  That's the real meat of the action.

MR. KELLEY:  Before you go any further, we object to the rest of it.  It's hearsay, because all they have is this contract is valid and no connection between the parties and the contract --

THE COURT:  Okay.

MR. KELLEY:  -- in that capacity.

THE COURT:  But that's the issue.  The issue is whether or not these facts as they are alleged in this -- that come into evidence, those facts and these parties are subject to the --

MR. KELLEY:  In that capacity.

THE COURT:  Right.  In that clause.  So if they are -- then you agree I have to dismiss it, it goes to the Isle of Man?

MR. KELLEY:  No.  There are still other grounds.  In Texas, you still have to show other things. You have a contractual one, but then you have to show that they're going to make themselves, the defendants

here, are willing and are willing to not only have it there but are putting it there. That is, if I go to the Isle of Man and they are resisting jurisdiction there, so the Heinlein Trust says, I've got four -- for instance the Isle of Man says, I have no jurisdiction over the Virginia Heinlein Trust. It has no ability to ever come in this court by consent or otherwise, because you can't always just give us. If that's the case, then the Court can't dismiss that piece of it.

THE COURT: That's a decent point. You can't have a situation where there is no jurisdiction anywhere in the world.

MR. KELLEY: And that's what they created was the ability to say move it over there but we are never going there. If that's the case, then the Court here has to keep it. Remember, this is more like venue. It's a forum selection clause for an action that ultimately has to happen. If it can't happen there or it's not going to happen there, then you have to keep it, so the motion dismiss is improper because the motion to dismiss and should have been a motion to abate if they wanted to go that way.

THE COURT: I've got my bearings now.

MR. LEVIN: Your Honor, it's a motion to dismiss because the Supreme Court of Texas tells us the

procedural vehicle is motion to dismiss. I'm going to answer your question about the parties first.

THE COURT: Let's do that question, since you brought it up first. Would it make -- if I agree with you, would it make sense for me to sign an order abating the case pending us all seeing that it actually does go get filed in the Isle of Man and Isle of Man takes jurisdiction?

MR. LEVIN: No, sir, because you're told by the Texas Supreme Court the vehicle is a motion to dismiss. Exclusive jurisdiction has been filed there.

Now let me address the parties issue.

THE COURT: But my brain is still stuck on the other topic. How do we resolve Mr. Kelley's issues that if I dismiss it and it gets refilled in the Isle of Man and that Court says, "I don't have personal jurisdiction" or whatever they say, "over -- over some of these parties," then we have a situation where maybe there is no place in the world to bring the case.

MR. LEVIN: The 14th -- I can take them one by one. The 14th District in the Deep Water slander case, which I understand is an appellate court decision -- jurisdiction.

THE COURT: Standing right on my shoulders.

MR. LEVIN: The decision in that case by Judge

Gooseman, who is now affirmed in the Supreme Court, they addressed this issue, and they said you don't -- it's not a defense to the enforceability of a forum selection clause to go review the enforceability of it in the foreign jurisdiction. In that case -- in that case, it's a very similar situation because the parties who successfully enforced the forum selection clause were not parties to the agreement. That what the Court says was -- the facts there are instructive. The forum selection clause was found in a consulting agreement with a Dutch company. And then there was a second agreement with a corporate defendant in that case. And then there were three defendants, three individuals who were also -- and neither the corporate defendant in that case nor the three individuals were parties to the agreement with the forum selection clause. But because the pleadings by the plaintiff, just as Mr. Kelley has pled here, has brought those folks within the purview of the forum selection clause. For example, the corporation was alleged to have been an alter ego of the corporation's forum selection clause. Mr. Kelley has alleged, Mr. Pierce has alleged, that Art Dula was an alter ego of Excalibur, which were in the first petition, which remains as an admission against interest and, therefore, binds the plaintiff. So that goes to

Dula.

Hightower and Anat Friedman and the Heinlein Trust, if I can pronounce it correctly, the Heinlein Trust, they are alleged to be joint and severally liable. What the Court says is that, in the Deep Water case, is because the plaintiff alleged that these other folks, non-signatory parties, were substantially interdependent in concerted actions with the entity with the forum selection clause, the plaintiff is bound and, in fact, equitable estopped, from contesting the applicability of the forum selection.

THE COURT: So your reaction to Mr. Kelley's comment that the facts that you bring me are hearsay or lack of foundation or whatever, that I can grant -- that I must grant -- I must grant your motion based on his pleadings because we take then, if what he's saying is true -- if what he's saying is true, then your argument is supported and I grant the motion. So I should forget any affidavits you guys have attached from your clients. That's what you are saying, though?

MR. LEVIN: The records upon which you perform your judicial labor is the petition and the amended petition and the contract. The contract is not hearsay. The business record affidavit was fine. It's also a declaration by a party opponent, and it's also admission

against interest because it's a ruling.  So it's admissible six ways from Sunday.  And you don't need evidence or discovery because he doesn't need discovery about his own allegations.  There are his allegation.  He made them.  He had a specific detailed petition.  We filed our original motion to dismiss.  And then he produced a sanitized petition that eliminated reference to Excalibur, but it doesn't make the first petition go away.  This is not like a motion to transfer venue.  It's completely different.

THE COURT:  I understand.  So what's going to happen in the Isle of Man?

MR. LEVIN:  Well, in the Isle of Man, first of all, the original corporate defendant to whom Mr. Horie gave his money certainly have jurisdiction.  Mr. Duly is the CEO.  Mr. Hightower is a director and an executive vice president.

THE COURT:  So the Isle of Man court has jurisdiction?

MR. LEVIN:  I'm not here to speak intelligently about the jurisdiction of Isle of Man court.  I say if I impose, you know, international federal jurisdictional concept upon the Isle of Man jurisprudence, I would say that these folks have purposely availed themselves of the privileges of doing

business in Isle of Man but you don't have to dismiss it with prejudice.

THE COURT: When does the statute run?

MR. KELLEY: It's running. It's running. We are in a gray area because of the fiduciary nature of Mr. Dula.

THE COURT: That's my interest if I'm able to and abate instead of dismissing.

MR. LEVIN: I'm here to say to you that I do not know and cannot speak to Isle of Man jurisdiction, I'm not contending that we are not subject to the Isle of Man jurisdiction. There is a difference. They can't make these folks show up on this isle the middle of the Irish Sea, but they can still bring the claims against them. So, you know, this is a -- this is not --

THE COURT: Subpoena power jurisdiction is different.

MR. LEVIN: This is not someone living here in Bellaire that's trying to bring a suit against a local lawyer. This is a Japanese billionaire Internet tycoon that put $49 million into a Isle of Man company to buy soviet space craft.

THE COURT: That's funny that you mentioned that, because I have once enforced a venue provision against two Houston residents where they agreed venue

would be Warsaw, Poland, or something like, because the purpose of the agreement was to make it nearly impossible for them to sue each other. I said, well, if that was your deal, I'm forcing it. So I'm okay if this thing going to the Isle of Man if that's what the agreement was.

MR. KELLEY: Let's back up. He's made some factual assertions that he has no support for, which we have counter support for.

THE COURT: Hang on. But that's why I wanted to make sure to clarify that if I carve out everything that doesn't appear in your petition --

MR. KELLEY: We've already did a first amendment. He's wrong. We have amended and that got rid of the first one. All of the stuff he talks about, well, it doesn't go away. Yes, it does.

THE COURT: I understand. I know what your operative pleading is, but I'm working on the concept that if I take your position -- if I carve out all of the facts as he alleged them that don't appear in your current active pleading, I look solely at your current active pleading, is that a way to do it?

MR. KELLEY: Sure. Because we have already done your work for you. That's why he's complaining. He's said we've sanitized it. We have eliminated any

reference to alter ego or anything like that. We focused -- remember, the money originally went to Mr. Dula in his IOTA trust account.

THE COURT: I know. But part of this is me learning, because I know that if that's what I hung my hat on today, they would just get a better affidavit that alleged the facts. I mean, I like to get past the procedure and get to the substance, at least while I have lawyers standing in front of me. So, let's pretend like everything gets fixed, I want to hear the argument.

MR. KELLEY: Here's the main argument. The guys that he's talking about in this lawsuit are not parties to the agreement that he wants to go with.

THE COURT: I know.

MR. KELLEY: The second thing is that agreement is not what our lawsuit is about. We are not suing on that deed. At best -- at best, he has a cause of action that he ought to be bringing in the Isle of Man.

THE COURT: Yeah, but there is a pretty -- the provisions -- the venue provision is pretty broad.

MR. KELLEY: The parties agree about this deed. Then the parties are defined clearly as four people.

THE COURT: I know.

Scotty Baldwin
Deputy Official Court Reportert

MR. KELLEY: Only Mr. Horie. The other two are not here, Abbey, the corporation and Excalibur Almaz. The only way he's getting there now is to argue, oh, in the first petition he argued he was the alter ego. He doesn't want to confess that I'm the alter ego. So if you take your argument, but that's gone now. The first amendment took it out. So, now he's left with, you are not the party, but I'm going to stretch it because the relief supposedly goes against the officers and employees. We are not suing them in that capacity at all. It doesn't talk about his law firm. It doesn't talk about his legal work. It doesn't talk about the trust at all. There is no way to get the trust in here and his work on behalf of the trust. And there is no way to go the lawyers in his office released who worked on this stuff. His associates. How does that come in here? I'm going to get my law firm released, because some board member or director, I signed a document that releases the directors but now it's going to include everybody in my law firm at Vinson & Elkins? That's not going to work.

MR. LEVIN: The company -- there are two ways we get the non-signatories. One is the way that I think the Court tells us, the 14th District, in the Deep Water slander cases. The other is the company group

definition. The company group definition in the agreement says that the release and, therefore, the ability to enforce it thereof applies to officers and directors, and that's Mr. Dula and Mr. Horie. It applies to affiliates, and that's Anat Friedman. And the only way they get to -- the only way they get to the Heinlein Trust is by the actions of Mr. Dula and Mr. Hightower. These are distinguished between their actions as director as, lawyer, and so forth. So they all fall within that company.

But I want to go back to, you know, the cases he's relying upon about forum selection clause, yeah, he has a case where they have to translate it from Polish, and he's got the case of Massachusetts and Ohio. This is a very broad forum selection clause. And it looks backwards and includes specifically noncontractual claims. It's not venue exclusive jurisdiction. It applies to everything that happened when the man invested his money to when they had all of these dealings, and he got out of it.

THE COURT: It's very broad. I read that with Mr. Kelley's. What I'm going to go back and think about a little bit is why it was captured non-signatories in the capacities that they signed. Because you have to wonder if I sign a document as -- in my capacity as

trustee of this trust, am I thinking to myself, you know, I bet this binds me individually, too. And it would be helpful to -- I'll go back and read it.

MR. LEVIN: Deep Water, from the 14th.

THE COURT: But I want to feel better about that part of it.

MR. LEVIN: Well, I think that case and also the International Profit case also will -- will alleviate your concerns in that regard. But in a motion to transfer venue, you have -- only have discovery because there is affidavits contesting the pleadings. Here we are entitled to rely -- Bay Area case says we're entitled to rely upon the supersedeas pleadings, whether he wants to run away from it now or not. So we think that the records, as I read all of these cases, heavy burden -- it's a heavy burden that the resisting party has to overcome the forum selection clause. This is now like an arbitration clause in this case, not like venue, but an arbitration clause that favors -- the United States Supreme Court says they are favored, and he has a heavy burden. And he has not done anything other than attack what his admission in his pleadings and the admissibility of this contract. He's not met his heavy burden to overcome the forum selection clause.

THE COURT: All right. I've got it.

MR. KELLEY: A lawyer who is being sued because of his legal work and fiduciary duty cannot simply say, ship me out to the Isle of Man because we are not coming under this agreement saying I'm suing on that, the Isle of Man gets there and says, I have no ability to enforce the ethical rules of Texas in relationship to the lawyer and his client.

THE COURT: But your lawsuit goes beyond just that, though.

MR. KELLEY: That's pretty much basically it, and the trust. Our lawsuit is, what you did as a lawyer in going to him and representing him, telling him you're going to do these things, and taking his money into IOLTA account. It's not a complaint. Our pleadings say you took the money, you put it your IOLTA account, you held it in trust and then you took that money, and you did things with it that you weren't supposed to do and you created these companies and you put the forum selection clause and did all of these things, and then you took the money yourself. So the lawyer ends up with the 50 million. If you look at the whole scheme, he takes the fifty from him, puts it in his trust, does this circuitous route and then comes back with the lawyer having the money. We are saying, you as the lawyer breached your fiduciary duties.

THE COURT: I get that.

MR. KELLEY: And you can't get a release as a lawyer -- this is the second ground. You cannot contractually stick in a release in some other document without having first -- and the whole purpose -- the only thing he's got in the entire document is he gave us a release as an employee or officer. So if that's it, the lawyer by definition cannot have -- we have got -- on a breach of fiduciary duty, if he claims that I stuck it in there and got release from my lawyer stuff, that's an independent act of breach of fiduciary duty. None of that comes under the deed.

THE COURT: I understand. As I read your pleadings, though, I had a hard time separating the transaction, you know, the space business investment thing from the stuff about the lawyer and his trust account. I had a hard time separating that out.

MR. KELLEY: But the Isle of Man is not going to take a breach of fiduciary duty, because he's not even admitting that we are not going to go there.

THE COURT: I tried to get him to say that on the record.

MR. KELLEY: I'll step back so we can get that clear. But when they get up there, they're going to say, oh, no, blah, blah. By the way, the rules do not

provide, even on a change of venue, the rules do not provide you stall discovery. They have a rule in there for venue that says this clearly doesn't do it. And under the hearing you have no time limit or anything on treating this. It's not treated under 21-day limit. O'Conner points out that -- so, there is no abatement of discovery.

So my other request was, I have a right to go forward with discovery. They are here. Dula is who. Mr. Friedman is here. I have a right the take their deposition. I've requested it properly. I've got a motion to compel. That's what before you. I'm saying, look, unless you are willing to abate it today or grant their motion, I am able to go forward, and I can test some of these theories. His argument is that money went --

The ruling is this. In reviewing this, four months, the Court will take any depositions, any discovery product, any affidavit. So clearly it contemplates taking in whatever evidence is before it. There is no rule of procedure that says if you file a motion to dismiss based on this, it halts discovery. They've got no order from the Court halting discovery. I have pending discovery with them that they have simply said we're not going to allow you to do.

THE COURT: My question on that was whether or not I needed the discovery to rule on the motion because once I rule, you are either here or you're not here.

MR. KELLEY: Or it's abated.

THE COURT: Last word. I have got it.

MR. LEVIN: Rule 88 does not apply because in a motion to transfer venue actually says in the rule, Rule, I think, 87, it says, it shall not be dismissed. It shall instead be transferred to another jurisdiction. That's why discovery is permitted in the motion to transfer venue context, because if the case is ongoing, it might go to different county. The case law says, the accelerated cases say, it is not a motion to change of venue here, instead transfer it and ongoing which allows discovery, this is dismissed. The party bargained to go to a forum selection clause in counter to that to allow discovery to go on.

THE COURT: I know. I just said that. It's a question of whether or not I need the information to rule on the motion j.

MR. LEVIN: The last point I just want to leave you with if I may, on the legal malpractice side. I just point out Section 11.4 of the deed of assignment recites that each party has either had the terms and effectiveness either explained by independent legal

counsel or had the full opportunity to have its terms and effects explained by independent legal counsel.

So Mr. Horie signed -- not only signed this deed, he initialed every page, because he was represented by independent legal counsel, not Mr. Dula.

MR. KELLEY: And nowhere in here does it say that my work as your lawyer gets a release from my legal work, and we are going to put that capacity in. This doesn't make it.

THE COURT: I have a trial that is in its third week that's coming back tomorrow. And I've got the charge conference this afternoon, so I don't see any reason this -- and I'm now playing in the HBA golf tournament on Thursday. I don't see me reaching this -- if I don't finish it today, then don't expect anything until Friday.

MR. LEVIN: That's better punctuality that I get from a lot.

THE COURT: I've not done this a couple of times where I just needed to think about it longer, but I always rule by the end of the day on Friday on anything I've gotten during the week. Otherwise, I forget what happens and next week stuff comes up. Right.

(End of hearing.)

Scotty Baldwin
Deputy Official Court Reportert

STATE OF TEXAS

COUNTY OF HARRIS

I, Scotty Baldwin, Official Court Reporter in and for the 55TH District Court of Harris, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $276.00 and was paid by Baker  Hostetler .

/s/Scotty Baldwin

Scotty Baldwin, CSR
Texas CSR 1019
Deputy Court Reporter
55TH District Court
Harris County, Texas
3610 E. Peach Hollow Cir.
Houston, Texas 77002
Telephone:  713.208.9524
Expiration:  12/31/2015

Scotty Baldwin
Deputy Official Court Reportert

# TAB D

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUMES
TRIAL COURT CAUSE NO. 2014-65947

TAKAFUMIE HORIE          ) IN THE DISTRICT COURT
                              )
vs.                          ) HARRIS COUNTY, TEXAS
                              )
LAW OFFICES OF ART DULA   ) 55TH JUDICIAL DISTRICT

_____

### DOCKET HEARING

_____

    On the 1st day of June, 2015, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Jeff Shadwick, Judge Presiding, held in Houston, Harris County, Texas.

    Proceedings reported by computerized stenotype machine.

**APPEARANCES**

Lloyd Kelley
SBOT NO. 11203180
Attorney At Law
2726 Bissonnet, Suite 240
Houston, Tx 77005
Telephone:  281-492-7766
Counsel for Plaintiff

Josh Thomas
SBOT NO. 24027428
BakerHostetler
811 Main Street
Suite 1100
Houston, TX 77002-6111
Telephone:  713-646-1331
Counsel for Defendant

Gina Wilburn, CSR
Official Court Reporter
55th District Court

THE COURT: Okay. This is Case No. 2014-65947, Takafumi Horie versus Law Offices of Art Dula.

MR. KELLEY: Hi, Judge. I'm Lloyd -- Lloyd Kelley. I forgot what team I'm on. This is Jim Pierce.

MR. PIERCE: James Pierce.

MR. LEVIN: Your Honor, I'm Mike Levin from Orlando, BakerHostetler. With me is my colleague, Josh Thomas, from Houston BakerHostetler.

THE COURT: Welcome back.

MR. LEVIN: Thank you. Good to see you, Judge.

THE COURT: So you've traveled twice on this topic to show me how sure you are that you're right and I'm wrong.

MR. LEVIN: I came here once for a hearing just to watch you before.

THE COURT: And now you know me to be reasonable and openminded. Although, I still I think I got this right. And I read your motion to reconsider. And fortunately, there is a quick remedy. It's a venue type ruling, which means it's mandamusible. Don't you agree?

MR. LEVIN: It's not a venue type ruling,

but it is mandamusible.

THE COURT: And so the Court of Appeals will correct me or not quickly enough so that there is -- the bulk of the case will happen where it's supposed to happen, whether here or the Isle of Man. So my intention is to deny the motion to reconsider.

MR. LEVIN: If I might, just two points just procedurally underlying why I move for reconsideration.

THE COURT: Okay.

MR. LEVIN: One, if it does go up on mandamus, that would be our intention if you deny it. I want to make -- it's a significant enough issue that I wanted to make sure the record is fully robust that we're not on mandamus, they say, well, you didn't argue that in front of the trial court judge.

THE COURT: Sure. And I'm all about letting lawyers lawyer and you tee your case up and I don't want the Court of Appeals to waste its time or you waste your time, of course.

MR. LEVIN: But the second is there was -- because the motion in opposition to the supplemental motion to dismiss was filed on the Friday right before the hearing, there were some things that we didn't get a full-blooded chance to address and I would like to

just -- understanding what you've said, I would like to lay out for you --

THE COURT: Let 'er rip, I'm unoffended.

MR. LEVIN: Thank you, sir. The Courts of this state tell you that the party resisting the mandatory forum selection clause has a heavy burden to show why it doesn't apply.

THE COURT: If it applies.

MR. LEVIN: Right. Well, let me set that one aside for a second.

So your order covered three issues. You covered the alleged status that Mr. Dula was Mr. Horie's attorney. Now, that, we say that's just fiction, never represented the man, but it's pled. So you covered that.

You covered whether or not Mr. Dula and Mr. Hightower would be susceptible to jurisdiction in the Isle of Man and you've pressed me on that and we've responded to that in our motion for consideration. And then you have the issue about the live pleading and the old pleading.

THE COURT: Right.

MR. LEVIN: So dealing with the attorney issue and the point I wanted to make first is that the allegation that Mr. Dula was Mr. Horie's attorney is not

inconsistent with the investment being an Excalibur investment. Those are two separate thoughts. It's not an either/or.

So if the forum selection clause does apply -- and we'll get to that deed of assignment in just a second -- the point is you said in the last paragraph of your order, well, status as attorney affects the interpretation of the release, something to that effect. I have your order.

But the truth is even under the decision cited by Mr. Kelley, the *Falk & Fish* decision, it's the only decision unearthed where there's a forum selection clause that was actually in an engagement letter between a Texas lawyer and a North Carolina client. And even in that case, in construing the mandatory forum selection clause, the Court said that it is the heavy burden on the client to show that it's unreasonable.

Now, the client met the burden there, but that's because the client submitted affidavits and -- in order to demonstrate that it was unreasonable. There is -- the truth is on this record, Mr. Kelley has submitted no affidavits on the part of Mr. Horie or anybody else. There has been nothing by the party resisting the forum selection clause to show that -- that it's unreasonable. So there's been a failure to

meet the burden.

On the second --

*THE COURT:* Nobody would have to if it doesn't apply.

*MR. LEVIN:* Right. And the second point you asked me about is could be Mr. -- and you pointed in your order, could Mr. Dula and Mr. Hightower be under the jurisdiction of the Isle of Man court. And I've -- and we've said, as you've seen in our motion to reconsider, yes, CEO of the company, vice president of the company, they admit they're subject to jurisdiction of the Isle of Man court.

But, again, it's not our burden to say there is jurisdiction. It's the burden of the party resisting the clause to say there is not, and that's not been met.

So let's go now to the main issue, the -- the actual deed of assignment and whether it applies to this situation or not, whether that forum selection clause applies.

That forum selection -- that deed of assignment in the recitals, as we went through in detail in our motion, covers every facet of Mr. Horie's involvement with this company. It's -- it covers in the recitals the memorandum of understanding where he agreed

to invest this $49 million. It covers the June agreement where after he got convicted and sentenced, he assigned his ownership of Excalibur to a trust.

THE COURT: How does it cover his relationship with an attorney if there was one?

MR. LEVIN: Because it covers his relationship with Excalibur regardless, regardless of whether it involves his attorney or not. The question really is: Why does -- if you have a forum selection clause that applies to all of Mr. Horie's relationship with -- regarding this 49 million-dollar investment, the question is: If it's also regarding his attorney relating to that investment, you still have a forum selection clause applying to that investment.

Now, the difference between the original com -- petition -- I keep calling it complaint because that's what we call it in Florida -- the original petition and the amended petition is only -- because they both talk about the alleged attorney/client relationship -- is only Mr. Kelley went through and every time it said Excalibur, he called it a space business or a space enterprise or a space venture or a space entity. And one other generalized term that I can't recall right now. All to substitute for Excalibur.

The allegations against Mr. Dula were the same. We've cited paragraph -- a -- a significant penultimate paragraph in the complaint that says what it was all about. So the only question is whether his status as an alleged attorney excuses Mr. Horie from having to comply with the forum selection clause and that becomes --

THE COURT: I don't see that as the question at all. The status of his relationship as an attorney is the -- is a separate relationship. If I hire you to help me make an investment in this parking lot across the street and I get into -- into a fuss with the people who own the parking lot across the street and we settle that case, when I separately -- I would never sue you, sir; but, I mean, if I separately sue you for malfeasance somehow in the attorney/client relationship, the venue or release or the terms of the settlement I've made with the folks across the street doesn't relate to that at all.

MR. LEVIN: No, sir.

THE COURT: That's -- that's the link that you're going to have to make for me.

MR. LEVIN: Yes. The link is that they allege that Mr. Dula is both the CEO of the parking lot across the street and the attorney for Mr. Horie, both.

So it's not me advising you to investment in the parking lot across the street and giving you negligent advice about it. It is on their theory -- and again, we've even attached communications to show that Mr. Dula never represented this man and this man is the combination of Steve Jobs and Bernie Madoff in Japan. He has plenty of lawyers and he was represented by a Silicon Valley firm in the situation and we attached that e-mail.

But the situation -- the problem with your analogy is that if I'm the CEO of the company you invested in, you invest the money, I'm also your attorney, then I may or may not be liable to you. That would come out of the facts. But if our contract has a forum -- a mandatory forum selection clause under *Falk & Fish* --

THE COURT: But my contract with you as my attorney doesn't.

MR. KELLEY: That's right.

MR. PIERCE: That's right.

MR. LEVIN: The contract relating to investment in the company you claim I'm the CEO of does.

THE COURT: And in that capacity, you're released and if I sued you in that capacity, I'd be in the Isle of Man.

MR. KELLEY: Right.

MR. LEVIN: He did sue. He did sue in the capacity for taking the money. He didn't sue for advising about the money. He sued for allegedly taking and misusing the money with regard to the investment in the Soviet-era spacecraft. That's the allegation.

THE COURT: Do you need to say anything before I --

MR. KELLEY: I was going to say, you probably don't want me to say anything because I --

THE COURT: I'm letting lawyers preserve their record, so --

MR. KELLEY: One more thing I wanted to tell you, last time that you had an -- idea, I didn't put it in -- I did some more research and I was going to get those cases for you. I just got short on time.

There is some case law that talks about moving it to -- this goes in line with your order. I'm going to tell you how right you are. You may not need it.

But there is some case law that says -- because we had this general discussion last time -- if you say, I want to have this case in Cuba -- this is before this year -- and you can't go to Cuba, then that won't work. You can't go to Russia or a communist country where they won't recognize that.

So this is analogous to that because a malpractice action based on a Texas lawyer's conduct and Texas lawyers, they're still not saying that the rest of the people can be sued in the Isle of Man and certainly they've never said anything about the trust and they've never said about these other people. And I think Mr. Pierce would add that on the basis of what they've done now -- how's it go, the case you've got?

MR. PIERCE: They're trying to control the litigation and the discovery by moving for protective orders for other people.

THE COURT: Right.

MR. PIERCE: So under some of the case law, they've actually even waived the venue motion.

MR. LEVIN: We have not -- we have not --

THE COURT: I don't think it's waived. Look, I didn't make this part of my order because it wasn't briefed and I didn't want to do the research myself. To be honest with you, I think it violates public policy. The relationship between a client and a Texas lawyer can be anywhere but Texas. That's not part of my ruling. But if I was asked, that's what I think.

All right. What's your --

MR. KELLEY: Can we go to the next one?

THE COURT: Yeah, motion to reconsider is

denied.

MR. LEVIN: Your Honor --

THE COURT: Do you need to say something else to preserve your record?

MR. LEVIN: No, sir. I've made my record, Your Honor, but then we would ask for a stay in this proceeding so that we can have the petition for mandamus because to be required to engage in discovery in this court is contrary to the forum selection clause.

THE COURT: Okay. Here's my reaction to that: Isn't this the same discovery that you would be doing in the Isle of Man where you would like to be?

MR. KELLEY: Yes.

MR. LEVIN: No, sir.

THE COURT: Why not? That's why the motion to stay would be denied. It seems like you're in the fight whether you want to be or not, which means you're in discovery whether you want to be or not. What court that takes place under seems to be unrelated to your -- to your mandamus.

MR. LEVIN: Well, that's the -- that assumes that the discovery procedures that occur under the Texas Rules of Civil Procedure are the same discovery procedures --

THE COURT: That's true.

*MR. LEVIN:* -- as would be in the Isle of Man. If I'm right and the parties did intend for this forum selection clause to apply to this dispute, then it's subject to whatever discovery procedures would apply in the Isle of Man, whatever evidentiary procedures would apply in the Isle of Man.

And so the ability to -- we are -- if we have to go forward with discovery, then we are denied the ability to avail ourselves of the protections of the laws of the Isle of Man and so that's why the whole point of mandamus is you can't rebag the cat, you can't unring the bell and so we should get a stay on that.

*THE COURT:* Sort of like sometimes when you order arbitration and the Rules of Discovery are different in arbitration or civil court, so I'm sort of persuaded by this.

*MR. KELLEY:* Well, but it's different in this case for this reason -- I'm going to take further on your idea of the public policy and if we haven't briefed it, we will. If a lawyer in this state thinks he can now shield himself by simply saying, all of my stuff is now going to be in Cuba or in the Isle of Man and I'm not even going to let you have discovery or anything like that, that's found unconscionable.

So you have to have a forum that first can

apply to that and then you get the same discovery. No lawyer can say in any contract you can't have your documents, you can't have your discovery and I'm going to make sure you're limited because that's now found --

THE COURT: I don't see this as that. If this was an interlocutory appeal that I thought might be ruled on in a year, I might -- I might have discovery go forward, but a mandamus is going to be pretty fast.

MR. KELLEY: But remember, in an interlocutory appeal, they don't even allow, except in certain circumstances, a stay on discovery. Why would you allow a stay on discovery in a mandamus?

You've said he's wrong. A mandamus is extraordinary relief. It's not a right of appeal. It's to say that somehow you've abused your discretion. So if that's the case, then there should be no stay in the discovery. We've got to get the case moving forward. And it could take as long as an interlocutory by the end of the money.

THE COURT: All right. Well, what do I -- if I grant your stay on appeal, what do I do if you don't file the mandamus?

MR. LEVIN: We're going to file the mandamus. And so you could say the stay lasts for a period of 20 days and if we have it -- and we'll reman

in effect if we file our mandamus; otherwise, it expires.  That would be the proper way to do it.

THE COURT:  That's not a bad idea.

MR. KELLEY:  So we're going to stay here a year when this thing's locked down?  We also sought discovery as far as the motion that is -- some of this stuff he says we don't have evidence --

MR. LEVIN:  The motion -- excuse me.

THE COURT:  Hang on.

MR. KELLEY:  So, remember, one of my objections was, Judge, I don't want you to hear this motion because we want to do some discovery.  Well, when you denied it, that became moot.  I don't want to have --

THE COURT:  That's because you won.

MR. KELLEY:  Right, but I would still -- if I still do some of that discovery and we find out some of the stuff I'm looking for, then on appeal I'll be able to supplement that mandamus record to support the decision that you did make.  Why should I be backed off of on discovery because I was right?

MR. LEVIN:  Well --

THE COURT:  Hang on.  But we don't know what the result of the mandamus is going to be.

MR. KELLEY:  It could be, go get your

discovery --

THE COURT: Right.

MR. KELLEY: -- in which case I've lost time. I waste six months to a year waiting on a --

THE COURT: Man, I don't know. I mean --

MR. KELLEY: There's no rule that provides for it. The mandamus rules don't provide for it. If he wants that kind of relief, get it from the appeal court. They'll issue it if they think it's legitimate.

THE COURT: All right. Here's what would make me feel better --

MR. KELLEY: Okay. Tell me what you want to do.

THE COURT: -- is if you told me what the rules of discovery were in the Isle of Man and if they're substantially similar to what you're asking for, I'll let it go forward, but I do understand his argument that --

MR. KELLEY: Then I'll go research it. I have no idea. Let me go find out.

THE COURT: So I grant his motion to stay. I put in the little thing that says as long as you mandamus me quickly, that would be --

MR. LEVIN: 20 days, Your Honor?

THE COURT: That would be the first time

Gina Wilburn, CSR
Official Court Reporter
55th District Court

in history the district court judge says, would you please hurry up and -- try to mandamus me?  But in any event --

MR. KELLEY:  If you're going to do this then and he loses in the mandamus, then I want an expedited discovery order that puts this case back on track.

THE COURT:  All right.  Well, let's wait and see what happens after the discovery.  What I prefer that you do is that you file a motion to reconsider the stay of the discovery if you find out what the rules of discovery are in the Isle of Man.  You understand my concern, right?

MR. KELLEY:  Yeah.  You're saying somehow he gets an advantage as a lawyer because he stuck in some settlement agreement something about the Isle of Man.  I think that's against public policy --

THE COURT:  Perhaps --

MR. KELLEY:  -- that you get any protection at all.

THE COURT:  But walk through the result of the Court of Appeals agreeing to the mandamus.  Okay?  Play that forward.

MR. KELLEY:  If they agree?

THE COURT:  Yeah.

MR. KELLEY: On which ground?

THE COURT: They -- they overturn me. They say that the venue is proper in the Isle of Man.

MR. KELLEY: For everybody, because they're only moving now to reconsider two of the them.

THE COURT: Whatever it is that they say.

MR. KELLEY: Okay. So two of them go and the other four stay.

MR. LEVIN: Mandamusing for all of them, so --

THE COURT: In any event, they say that the case has to go forward in the Isle of Man and the Isle of Man Courts say, Well, we, the Isle of Man, basically just look out at the North Atlantic Ocean and do our -- and we don't like discovery and so you don't get any, then in that case, the Court having decided the ill Isle of Man is appropriate, then they have, I guess, also decided that it doesn't violate public policy or whatever else happens.

But -- but I do think it would be inappropriate for me to begin to -- to order discovery which is not available in this Isle of Man because if the Court of Appeals reverses this is --

MR. KELLEY: So all you need to know is if it's available in the Isle of Man, you'll take off --

THE COURT: Then I'll feel better about it occurring here because it would have occurred there anyway.

MR. KELLEY: Okay. I'll go look.

THE COURT: Do you see what I'm saying?

MR. KELLEY: Sure.

THE COURT: Does that seem --

MR. KELLEY: It doesn't seem fair to me, but I'll do it.

THE COURT: Yeah, it seems fair to you.

MR. KELLEY: No, it doesn't.

THE COURT: Yes, it does.

MR. KELLEY: I mean, I don't think that a Texas --

THE COURT: You're going to go out in the hallway and say, you know what, Shadwick was right.

MR. KELLEY: No, I'll never think that a Texas lawyer ought to play by tricks in stealing 50 million --

MR. LEVIN: Excuse me. He's not -- he's never represented the man. This is a fictional argument --

MR. KELLEY: See, that's --

THE COURT: Don't worry about it.

MR. KELLEY: -- a fact question and if you

want to argue the facts, let's put 12 people over there and you make that argument, I'll make mine, let's see what the jury says.

THE COURT: This is just you and me with our normal banter.

MR. KELLEY: I'm following what you're saying because you want to be 100 percent right and if they do it in the Isle of Man and do it in there, then it can't be in error. Let me go see -- if it turns out to be correct, then I don't need to fight anymore. So why don't I do that?

I think it's wrong that you would get a stay when the rules don't provide for it and just because you argue one thing and if delay is all you, you know, ever want to do you want to, but, hey, you move your docket pretty fast, so --

MR. LEVIN: I'll submit an order, Your Honor.

THE COURT: Haven't you already?

MR. LEVIN: We did, but we didn't say with all the 20 days and the things you've put in today, so --

THE COURT: Fix that for me, send an order up.

MR. LEVIN: Sure. I'll run it by

Mr. Kelley.

THE COURT: You know, the form not substance. The motion to reconsider is denied.

MR. LEVIN: Yes, sir.

THE COURT: And is there something else?

MR. LEVIN: The stay and the 20 days and then there was a motion to quash deposition --

THE COURT: The motion to compel, but if discovery is stayed, then that's --

MR. KELLEY: Can you -- so I don't have this problem again, that we agreed to a confidentiality --

MR. LEVIN: We did not.

MR. KELLEY: They didn't that agree? Okay, fine, then when we come back to my discovery --

MR. LEVIN: Your Honor --

THE COURT: It's not on my docket --

MR. KELLEY: When it's lifted, I don't want him to have an advantage for what he's done in discovery already. So I don't want him to use this stay to get an advantage that he wouldn't have. Today I was on a motion to compel --

THE COURT: We'll just have to worry about that when it comes back.

MR. LEVIN: Can I just say one word about

the confidentiality because --

THE COURT:  No.  I have too many lawyers --

MR. KELLEY:  It was send to me yesterday.

THE COURT:  Don't worry about it.

MR. KELLEY:  Don't worry about it.

THE COURT:  In one ear, out the other. I've got filter and it's limited to what's in front of me.

MR. LEVIN:  Thank you, Judge.

(Court Adjourned.)

STATE OF TEXAS
COUNTY OF HARRIS

I, Gina Wilburn, Official Court Reporter in and for the 55th District Court of Harris, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $_____ and was paid/will be paid by Josh Thomas.

WITNESS MY OFFICIAL HAND on this, the 18th day of June, 2015.

/s/ Gina Wilburn

Gina Wilburn, CSR
Texas CSR 5885
Official Court Reporter
55th District Court
Harris County, Texas
201 Caroline, 9th Floor
Houston, Texas 77002
Telephone:  713-368-6056
Expiration:  12/31/2015